**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 3306, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

and

**Department of Veterans Affairs, Intervenor.**

No. 1529, Docket 93–4009.

United States Court of Appeals, Second Circuit.

Argued May 26, 1993.

Decided Aug. 4, 1993.

Martin R. Cohen, Asst. Gen. Counsel, AFGE, Bala Cynwyd, PA (Mark D. Roth, Gen. Counsel, AFGE, Washington, DC, on the brief), for petitioner.

Frederick M. Herrera, FLRA, Washington, DC (David M. Smith, Sol., William R. Tobey, Deputy Sol., FLRA, on the brief), for respondent.

Douglas Ross, Dept. of Justice, Civ. Div., Washington, DC (Stuart E. Schiffer, Acting Asst. Atty. Gen., William Kanter, Dept. of Justice, on the brief), for intervenor Dept. of Veterans Affairs.

Before: NEWMAN, Chief Judge, FEINBERG, Circuit Judge, and KELLEHER,* District Judge.

JON O. NEWMAN, Chief Judge:

This appeal concerns the jurisdiction of the Federal Labor Relations Authority ("FLRA") in relation to the Department of Veterans Affairs ("DVA"). The specific issue is whether the FLRA may adjudicate a claim that DVA's peer review procedure for professional employees involved an unfair labor practice under the Federal Sector Labor Management Relations Statute ("FSLMRS"), 5 U.S.C.A. §§ 7101–7135 (1980 & West Supp. 1993). The issue arises on the petition of American Federation of Government Employees Local 3306 ("the Union") for review

* The Honorable Robert J. Kelleher of the United States District Court for the Central District of California, sitting by designation.

of two decisions of the FLRA, 42 F.L.R.A. 1059 (Oct. 25, 1991) and 46 F.L.R.A. 805 (Nov. 27, 1992). In each decision, the FLRA held that it could not look beneath the surface of peer review procedures and could not find the initiation or results of such procedures to constitute an unfair labor practice even if motivated by anti-union animus. On appeal, the Union contends that the FLRA is required to provide greater protection to professional employees. The DVA has intervened in support of the FLRA decision. We hold that the FLRA, at least when supported by the DVA, is entitled to deference in its interpretation of the relevant statutes, and that the FLRA's interpretation is permissible. Accordingly, we deny the petition.

## Background

William J. Ward and David Bellomo were registered nurses at the Veterans Administration Medical Center in Canandaigua, New York. The two were also, respectively, the president and vice president of the local union. As professional medical employees, they had been appointed pursuant to 38 U.S.C. § 4104 (1988) by the former Department of Medicine and Surgery of the Veterans Administration ("DMS"), and were subject to the personnel provisions of the statute creating DMS, 38 U.S.C. §§ 4101–4168 (1988). In May 1991, DMS was renamed, and the statutory scheme governing its employees was substantially revised. However, the parties agree that this case is governed by the provisions of title 38 in effect before the 1991 amendments.

In 1989, Ward and Bellomo were notified by the Director of the Canandaigua hospital that complaints of patient abuse had been lodged against them. After investigative teams substantiated the allegations, the Chief Medical Director, who heads DMS, issued notices of proposed discharge and convened disciplinary boards pursuant to 38 U.S.C. § 4110 (1988). The boards are authorized by statute "to determine, upon notice and fair hearing, charges of inaptitude, inefficiency, or misconduct." *Id.* § 4110(a). Both Ward and Bellomo argued before the boards that the complaints had been lodged against them as a result of union activity. The disciplinary board in Ward's case sustained one of three complaints, rejected the contention "that the proposed discharge is in reprisal for ... union activities," and recommended that he be discharged. The board in Bellomo's case sustained one complaint, did not discuss the allegation of anti-union animus, and recommended that he be suspended for fourteen days. The Chief Medical Director accepted both recommendations, and his decision was sustained by Edward J. Derwinski, then-Secretary of DVA.[1]

After the notices of proposed discharge had been sent but before the disciplinary boards had issued their recommendations, the Union filed unfair labor practice charges with the FLRA. The Administrative Law Judge concluded that anti-union animus was a substantial cause of the proposed terminations and that the employer had not carried its burden of demonstrating that it would have taken the same action without

1. Ward and Bellomo sought judicial review of the Secretary's decisions. In Ward's action, which was transferred from the District Court for the District of Columbia to the District Court for the Western District of New York, Judge Larimer vacated the Secretary's decision. *Ward v. Derwinski*, No. 92–CV–6436L, 1992 WL 525118 (W.D.N.Y. Dec. 21, 1992). An appeal of that judgment is pending in this Court. In Bellomo's action, which was heard in the District Court for the District of Columbia, Judge Flannery held for the Secretary, *Bellomo v. Derwinski*, No. 91–2996 (TAF), 1992 WL 205639 (D.D.C. Aug. 7, 1992), and the D.C. Circuit summarily affirmed, *Bellomo v. Brown*, No. 92–5350, 1993 WL 183974 (D.C.Cir. Apr. 26, 1993). We do not regard the decisions in these actions as having any preclusive effect on the issues before this Court. The District Court actions presented questions con-

cerning the procedural and substantive validity of the Secretary's decisions. This petition does not involve the validity of the Secretary's action, but instead concerns the authority of the FLRA to investigate actions by the Secretary and the Department of Veterans Affairs. Nor do we regard the District Court decision in favor of Ward as mooting any part of this petition. If the Union were to prevail in this petition, it would be able to seek broader relief than that obtained by Ward in the District Court. For instance, the FLRA, having adjudicated the initiation or results of the peer review procedures to be an unfair labor practice, could require the DVA to modify peer review procedures or even to negotiate with the Union over the scope of peer review procedures. *See* 5 U.S.C. § 7118(a)(7)(A)–(B), (D); *American Federation of Government Employees Local 3090 v. FLRA*, 777 F.2d 751, 753 n. 13 (D.C.Cir.1985).

the improper motivation. However, the ALJ concluded that he was without authority to grant relief because of the FLRA's decision in *Department of Veterans Affairs, Veterans Administration Medical Center, San Francisco, California,* 40 F.L.R.A. 290 (1991) ("*VA San Francisco*"). In *VA San Francisco*, the FLRA initially found that the FSLMRS applied to non-supervisory title 38 employees, such as Ward and Bellomo. However, the FLRA concluded that it could not apply dual motivation analysis when the permissible motivation for disciplinary action was inaptitude, inefficiency, or misconduct, and the disciplinary action was effectuated through peer review under 38 U.S.C. § 4110. The FLRA reasoned that more substantive review would intrude on the exclusive authority of the DVA to make determinations regarding professional misconduct or incompetence, and would run afoul of the command of 38 U.S.C. § 4119 (1988), which provides that

> no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of this subchapter shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overridden, or otherwise modified.

Thus, under *VA San Francisco*, if DMS "asserts a lawful reason for a disputed action, and such assertion is consistent with action taken pursuant to its exclusive authority under title 38 ... and is final," 40 F.L.R.A. at 302, the ALJ may not look beneath the surface of the disciplinary board decision and must dismiss the complaint.

After exceptions were taken, the FLRA substantially approved the ALJ's decision. However, the FLRA took the view that *VA San Francisco* should apply only to final decisions, and thus the ALJ should have held the complaint in abeyance pending a decision by the Chief Medical Director. Subsequently, the Chief Medical Director adopted the recommendations of the disciplinary boards, the ALJ held that he could not substantively review the decisions, and the FLRA affirmed.

## Discussion

### I. Standard of Review

■ The Union argues that we should review the FLRA's decision without deference because the FLRA has (1) construed congressional intent and did not merely make a policy choice within its delegated authority, and (2) interpreted provisions of title 38, a statute administered by another agency. The FLRA responds that the FSLMRS provides for a narrow standard of review of all FLRA action, *see* 5 U.S.C. § 7123(c) (1988), and that though the agency partially construed law other than its enabling statute, it is still entitled to deference when dealing with a matter involving the complexities of federal labor relations. The DVA, which agrees with the FLRA's interpretation of the statutory schemes, argues that the DVA is entitled to deference in interpreting title 38, and that the DVA is thus empowered to approve the FLRA's interpretation.

■ In *Veterans Administration Medical Center, Northport, New York v. FLRA,* 732 F.2d 1128 (2d Cir.1984) ("*VA Northport*"), we reviewed an FLRA decision that involved construction of both the FSLMRS and title 38. We rejected the FLRA's contention that it was entitled to deference. Our rejection was based on the two grounds relied upon by the Union on this appeal: that the FLRA was construing congressional intent and that the FLRA was interpreting a statute administered by the Veterans Administration. *Id.* at 1132 n. 7. *VA Northport* was decided a few months before *Chevron U.S.A., Inc. v. Natural Resource Defenses Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). To the extent that we relied on a distinction between agency action that "makes policy choices within the authority given ... by Congress" and agency action "premised on [the agency's] understanding of a specific Congressional intent," 732 F.2d at 1132 n. 7, *Chevron* compels us to recede from our view that agency action of the second type is not entitled to deference. In reviewing any agency construction of a statute, our role is to determine "whether Congress has

directly spoken to the precise question at issue," *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781, and, if not, whether the agency's construction is "reasonable," *id.* at 844, 104 S.Ct. at 2782. Nothing in *Chevron* precludes an agency from considering congressional intent in making a "reasonable" construction.

*VA Northport's* second point—that deference is accorded an agency only when construing a statute it is charged with administering—remains valid. *See Professional Airways Systems Specialists v. FLRA,* 809 F.2d 855, 857 n. 6 (D.C.Cir.1987). In this case, however, the DVA has intervened to indicate its agreement with the FLRA's resolution of the interplay of the two pertinent statutes. Although the Eighth Circuit has declined to defer to the FLRA in this situation, *see American Federation of Government Employees Local 3884 v. FLRA,* 930 F.2d 1315, 1324 n. 12 (8th Cir.1991), the Court's decision did not consider the significance of the DVA's concurrence in the FLRA's statutory interpretation. We believe that deference is appropriate under these circumstances. In many cases, perhaps most, agencies will disagree over the boundaries of their respective jurisdiction. In such cases, neither agency can be preferred over the other, and a court must determine independently the proper demarcation between the agencies. But when two agencies, each examining statutes they are charged with administering, agree as to the interplay of the statutes, there is no more reason to mistrust their congruent resolutions than there is to mistrust action taken by a single agency.

## II. Merits

 The Union's primary argument on the merits is that *VA San Francisco* was wrongly decided because it fails to accord title 38 employees the full protection of the FSLMRS. Questions concerning the protection of title 38 employees are not new. We have previously held that the VA has no obligation under the FSLMRS to bargain over grievance proposals concerning disciplinary actions related to alleged professional misconduct, since such matters are exclusively controlled by 38 U.S.C. § 4110. *See VA*

*Northport,* 732 F.2d at 1131–33. Our decision relied on 38 U.S.C. § 4119, the provision giving precedence to title 38 over title 5. The Eighth Circuit has reached an identical result, *see Veterans Administration Medical Center, Minneapolis, Minnesota v. FLRA,* 705 F.2d 953 (8th Cir.1983) ("*VA Minneapolis* "), and the District of Columbia Circuit has extended the principle to hold that the DVA need not bargain over a proposal to establish a grievance procedure for working conditions unrelated to disciplinary employment actions, *see Colorado Nurses Association v. FLRA,* 851 F.2d 1486 (D.C.Cir.1988). The only clearly recognized area in which the FLRA may find an unfair labor practice in connection with DVA matters is the DVA's violation of existing collective bargaining agreements. *See American Federation of Government Employees Local 3884 v. FLRA,* 930 F.2d at 1327–28.

The Union first argues that the broad language of the FSLMRS compels extension of its protections to DVA employees, *see* 5 U.S.C. § 7103(a)(2)–(3) (1988 & Supp. III 1991), just as the protections of various civil rights statutes have been extended to DVA employees, *see, e.g., Henderson v. U.S. Veterans Administration,* 790 F.2d 436, 439 (5th Cir.1986) (applying title VII to nurse employed by Veterans Administration). The FLRA and the DVA convincingly respond, however, that such cases are distinguishable because 38 U.S.C. § 4119 specifically provides that provisions of title 5 or other provisions "pertaining to the civil service system" cannot implicitly modify title 38. The FSLMRS is in title 5; the civil rights statutes on which the Union relies are not in title 5 and are of considerably more general application than laws "pertaining to the civil service system." Thus, at a minimum, the relevant statutes cannot be said to prohibit the FLRA's construction.

We need not decide whether or not the relevant statutes *compel* the FLRA's construction, since that construction is, in any event, reasonable. The Union may be correct that this decision renders the protection of the FSLMRS nugatory for professional DVA employees. But, as our decision in *VA Northport* and the decisions in other circuits

recognize, Congress has sharply limited the authority of the FLRA in the affairs of these employees. For instance, *VA Minneapolis* held that even a sequential grievance procedure would undermine title 38 procedures because "[t]he boards were created not only to contribute medical expertise in recommending disciplinary action for professional misconduct, but to replace the 'red tape' of civil service review with fair procedures designed by and for medical professionals." 705 F.2d at 957 n. 4. Here, too, the FLRA could reasonably conclude that allowing an ALJ to adjudicate as an unfair labor practice the action of the disciplinary board would undermine the efficiency and independence of the disciplinary boards.

### Conclusion

We find that the FLRA is entitled to deference and that its construction of the relevant statutes is permissible. The petition is denied.