Frans G. CLAASEN, M.D., Plaintiff,

v.

Jesse BROWN, et al., Defendants.

No. Civ.A. 3:96–CV–35.

United States District Court,
N.D. West Virginia,
Martinsburg Division.

Nov. 17, 1998.

William James Kenney, Washington, DC, Deirdre Evans, Frazer, PA, for plaintiff.

Diane M. Sullivan, Washington, DC, Roderick Lynn Thomas, Daniel W. Dickinson, Jr., Wheeling, WV, for defendant.

### MEMORANDUM AND ORDER

BROADWATER, District Judge.

This is an action for judicial review pursuant to 38 U.S.C. § 7262 and 7264 of the final administration decision of the Under Secretary of Health ("Secretary"). This decision sustained the findings of the United States Veterans Administration ("VA") Disciplinary Appeals Board ("DAB") concerning disciplinary issues relating to the professional conduct of the plaintiff, Frans G. Claasen, M.D. ("Claasen"), while employed as a physician at the Veteran's Administration Medical Center ("VAMC") in Martinsburg, West Virginia. This matter is before the Court pursuant to 38 U.S.C. § 7462(f)(1), related statutes, laws and regulations, as the result of a Stipulation of Compromise Settlement ("Stipulation") (Document # 96), dated August 8, 1997, that dismissed with prejudice all but Count I, Violation of Employment Rights, of Claasen's Second Supplemental Amended Complaint ("Complaint"). Under this Stipulation, the Court allowed this case to proceed as a judicial review of the record of the DAB.

This case is presently pending on plaintiff's motion, styled as plaintiff's appeal brief in support of reversing the discharge decision of the DAB as approved by the Secretary (Document # 110), filed on April 1, 1998, and the memoranda filed in support thereof and in opposition thereto, as presented at a hearing held on August 21, 1998. For the reasons more fully set forth below, the Court **DENIES** plaintiff's motion in support of reversing the discharge decision of the DAB as approved by the Secretary (Document # 110) and **AFFIRMS** the DAB's discharge decision.

### I. STATEMENT OF THE CASE

Claasen is a medical doctor who was a full-time, permanent employee of the VAMC in Martinsburg, West Virginia, appointed under 38 U.S.C. § 7401. Claasen worked at this VAMC from 1968 to April 8, 1994. On that date he was terminated pursuant to a letter dated April 1, 1994 from Thomas Weaver ("Weaver"), VAMC Director. The discharge was based on Claasen's unsatisfactory performance of his duties as a physician. (Administrative Record ("A.R.") at 193.)[1] Although he practiced internal medicine for 26 years, Claasen was not Board certified. Triggered by personnel and patient complaints, Dr. Meredith Richmond ("Richmond"), Claasen's immediate supervisor, initiated two separate Performance Improvement Plans ("PIPs") to evaluate Claasen's performance of his assigned medical responsibilities. (A.R. at 574.) The first PIP, concluded in November 4, 1992, specified nine areas of concern which needed correction and indicated that Claasen was counseled on these areas individually. (A.R. at 1964–65.) In February 1993, at the end of the first PIP period, Richmond again counseled Claasen concerning his continued poor performance and pointed out that his performance on the annual proficiency report was marginal to unsatisfactory and that issues concerning patient care and management remained a serious concern. (A.R. at 1968–69.) Richmond advised Claasen that a second three-month PIP would begin on February 5, 1993 and that Claasen's clinical competency "must be brought up to at least a satisfactory level for you to continue your

---

1. Page numbers refer to the "Bates pagination system" that appear at the top of each page of the Administrative Record.

employment as a VA physician." (A.R. at 1949.) Richmond then outlined the six ways that Claasen would be evaluated. These included Quality Assurance/Utilization Review ("QA/UR"), Quality Assurance Program ("QAP"), telephone interviews, Self–Assessment Surveys, feedback from the Chief of Staff and Medical Center Director, number of patients requesting to change to another physician during the following three months, and continued reviews not limited to the items listed above. (A.R. at 1949.) Finally, Richmond concluded the performance improvement memorandum with a warning that the evaluation process would end on May 3, 1993, and if improvements were not brought up to at least a satisfactory level, "corrective action will be initiated, up to and including proposed discharge." *Id.*

On May 14, 1993, Weaver suspended Claasen's clinical privileges until further notice based upon recommendations from Francis Citro ("Citro"), Chief of Staff and Richmond's review of care. (A.R. at 1904.) Weaver assigned Claasen to administrative duties during the period of suspension. On May 25, 1993, Weaver sent a letter to Claasen, indicating that Claasen was reprimanded for four specific reasons as stated in the notice of proposed suspension. (A.R. at 2037.)[2]

Claasen filed three grievances: the first grievance filed on June 3, 1993 concerned the May 14, 1993 letter of reprimand; the second grievance filed on June 5, 1993 concerned the continuing suspension of his clinical privileges; and the third grievance filed on October 12, 1993 concerned the manner in which peer reviews were conducted. On June 8, 1993, Claasen filed two more grievances, contesting the decision that the suspension of his clinical privileges was not a major adverse action and the continued suspension of his clinical privileges.

Claasen had attempted to administratively appeal the temporary suspension of his clinical privileges as a major adverse action under 38 U.S.C. § 7462 and 7464. On May 27, 1993, Weaver informed Claasen that a temporary suspension of his clinical privileges did not constitute a major adverse action and invited Claasen to file a grievance instead.[3] Weaver also informed Claasen that if he was dissatisfied with the decision, Claasen "may present the grievance under the formal procedure" in writing within 10 calendar days after the date of receipt of the July 21, 1993 decision. On July 21, 1993, Weaver informed Claasen that his clinical privileges would remain suspended pending completion of further review of Claasen's clinical competence. (A.R. at 1878.) Claasen responded on August 5, 1993, by filing an administrative complaint alleging employment discrimination based on age.

On October 29, 1993, Citro notified Claasen of his proposed discharge from his position as a staff physician based on Claasen's unsatisfactory performance of clinical competence. (A.R. at 1979–80.) Citro informed Claasen of his right to reply to the notice of proposed discharge, to submit affidavits and other documentary evidence, and to be represented by an attorney. *Id.* In fact, Claasen was represented by an attorney during this administrative grievance procedure.

On December 3, 1993, the VAMC appointed Mary Ruth Buchness ("Buchness") to serve as the grievance examiner concerning Claasen's three initial grievances. On a memorandum dated February 28, 1994, Buchness conveyed her finding of Claasen's three grievances to Barbara Gallagher ("Gallagher"), Department of Veterans Affairs ("Department") Regional Director. (A.R. at 1613–24.) Buchness based her findings and recommendations on the review of more than fifty sets of documents and three hundred and sixty minutes of interviews conducted at hearings held on January 5 and 6, 1994.[4]

---

2. These reasons, as specified in a February 16, 1993, letter from Richmond to Claasen, proposing to suspend him for ten calendar days from his position as a Staff Physician, are based on four separate incidents of negligence involving a patient identified as CWS. (A.R. at 2038–40.)

3. This letter is missing from the record but is mentioned by reference in a memorandum from Weaver to Claasen dated July 21, 1993. (A.R. at 1878.)

4. Buchness recommended that the reprimand for the care of patient WCS should be upheld (Grievance # 1), that peer review should be done pro-

Weaver chose to disregard Buchness' recommendations. On March 22, 1994, Weaver submitted a response to Gallagher concerning Buchness' report. Weaver did not provide a copy of the response to Claasen. On April 1, 1994, while Buchness' report was still under review by Gallagher, Weaver notified Claasen of his discharge as of April 8, 1994. (A.R. at 1627–28.) Weaver also informed Claasen that he had the right to appeal the decision to the DAB and to request a formal hearing before the DAB. By a memorandum dated April 8, 1994, Gallagher accepted some of Buchness' findings but rejected some of the recommendations, stating that they were not supported by the preponderance of the evidence or were contrary to VAMC policy.[5] (A.R. at 1610–12.)

Claasen applied for retirement effective April 8, 1994. (A.R. at 13.) On August 2, 1994, Claasen canceled his retirement request in order to be able to pursue an appeal through the DBA. (A.R. at 1609.) On September 21, 1994, Claasen filed an appeal concerning his discharge to the DAB. An amended version of the appeal was refilled on September 23, 1994. (A.R. at 106–16.) Claasen was represented by counsel throughout his DAB appeal process. A DAB panel, composed of three out-of-state VA physicians appointed by the Secretary, was convened to conduct a hearing on the discharge of Claasen.[6] The hearing started on February 22, 1995 and lasted for three days, ending on February 25, 1995. The DAB heard testimony of ten witnesses, including the testimony of Claasen and his expert witness. (A.R. at 163–68, 523–1596.) The DAB ruled on numerous motions and objections presented by Claasen's attorney. *Id.* The DAB sustained the charges against Claasen and concluded that the circumstances warranted discharge.

(A.R. at 168.) On June 30, 1995, the Secretary, after consideration of the DAB's analysis and findings, executed the decision of the DAB, making this the final administrative action in the case. (A.R. at 1.) On May 9, 1994, Claasen filed a Complaint in the U.S. District Court for the District of Columbia, seeking, among other issues, review of the DAB's findings. On February 16, 1996, U.S. District Judge Gladys Kessler dismissed some of Claasen's claims and transferred the remaining claims to this Court.

### III. STANDARD OF REVIEW

In reviewing a final decision by the DAB, the Court must determine whether the DAB's decision is: 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule, or regulation having been followed; or 3) unsupported by substantial evidence, per 38 U.S.C. § 7462(f). Circuit courts reviewing DAB proceedings have held that the review is limited to a determination of whether the applicable procedures have been followed, whether the dismissal was supported by substantial evidence, and whether it was arbitrary and capricious. *Ross v. U.S. Postal Service*, 664 F.2d 191 (8th Cir.1981).

### IV. DISCUSSION

Claasen offers several arguments in support of his contention that he was wrongly discharged from his position as a physician in the VA Medical Center.

■ First, Claasen argues that the evidence against him was improperly used because it was gathered in the QAP. On September 3, 1993, the Executive Committee of the Medical Staff continued the suspension of

---

spectively, not retrospectively done outside of the VAMC (Grievance # 2), that Claasen's medical privileges should be reinstated, that the charges be dismissed, that future evaluations be conducted by objective peer, and that Claasen be removed from the supervision of Richmond and removed to another service. She also found no evidence of age discrimination. (A.R. at 1913–24.)

5. Gallagher accepted Buchness' recommendation that the reprimand be upheld, accepted Buchness recommendation that submission of

patient charts for outside peer review was valid, and rejected the recommendation that Claasen's clinical privileges be restored.

6. The DAB was comprised of Dr. Mark Vandrunen, Chief of Radiology at the Hines, Illinois VA Medical Center; Dr. Robert Gebhart, Assistant Chief of Staff for Ambulatory Care at the Atlanta VA Medical Center, and Dr. Anthony Salem, Chief of Staff at the Sioux Falls, South Dakota VA Medical Center. (A.R. at 79–81.)

Claasen's clinical privileges, based in part on QAP documents.[7] At the time of this action, Title 38 U.S.C. § 5705 protected from disclosure certain records and reports generated as part of a medical QAP. Section 5705(c)(5), titled "Confidentiality of medical quality-assurance records" provided that protected QA records may not be used by "Department employees as evidence, or relied upon in a matter which could require them to be treated as evidence so that they would be subject to mandatory disclosure in an administrative, statutory disclosure or judicial process."[8]

A Medical QAP is defined as "a Department systematic health-care review activity designated by the Secretary to be carried out by or for the Department for either such purpose [of improving the quality of medical care and improving the utilization of health-care resources in Department health-care facilities]." 38 U.S.C. § 5705(c)(2). The Department has further limited the use of QA records and documents related to evaluation of the care provided by VA practitioners, who may use the confidential and privileged QA records "to foster continuous quality improvement." 38 C.F.R. § 17.508(b). Accordingly, QA records protected by 38 U.S.C. § 5705, and not exempted by 38 U.S.C. § 5705(b) or restricted by 38 C.F.R. § 17.508(b) may not be used in an administrative proceeding to discharge a VA physician.

The records considered by the DAB were not QA records, and therefore not protected by 38 U.S.C. § 5705(b). Claasen initially brought up the issue of whether the documents used by the DAB were QA records at the pre-hearing conference. The Agency offered the testimony of an expert witness,

Agatha Francis ("Francis"), an Enforcement Officer for Accreditation and Certification for Pathology and Laboratory Medicine, Service. Francis testified that reviews conducted to assess the practice of a single physician were not QA records. The DAB excluded in the Claasen decision the QA records identified by Francis as confidential and privileged. (A.R. at 164.) Furthermore, the witness Claasen identified to testify on the issue of QA records was not called by the plaintiff. *Id.*

Neal Lawson, the Department's Assistant General Counsel, considered whether documents used in removing Claasen were QA records protected by 38 U.S.C. § 5705. He concluded that "as a matter of law, the documents submitted for legal review are not protected by § 5705, and that statute is not a bar to VA's use of them in proceedings before the Disciplinary Appeals Board." (A.R. at 1602.) Federal courts "accord an agency's interpretation of its own regulation a 'high level of deference,' accepting it 'unless it is plainly wrong.'" *General Electric Co. v. United States Envtl. Protection Agency,* 53 F.3d 1324, 1327 (D.C.Cir.1995) (quoting *General Carbon Co. v. OSHRC,* 860 F.2d 479, 483 (D.C.Cir.1988)). Therefore, the Court is of the opinion that the DAB did not employ QA records to reach a decision in Claasen's appeal.

█ Second, Claasen argues that peer review evaluation gathered in a QAP may not be used against an employee in a disciplinary matter. Claasen relies on 38 U.S.C. § 5705(b) and 38 C.F.R. § 17.508(b) to assert that peer review evaluations are confidential and privileged and should not be used as evidence against him in a personal matter. Again, the DAB utilized testimony and evi-

---

7. The September 3, 1993 Minutes state that "this meeting was held as part of the Quality Assurance Program, and the minutes are considered confidential and privileged under Provision ... 38 C.F.R. § 17.500 – 17.540. This material shall not be transmitted to anyone without proper consent or other authorization as provided by law."

8. In 1991, Section 5705(b) was amended and now reads: "Records and documents created by the Department as part of a medical quality-assurance program (other than reports submitted pursuant to section 7311(g) of this title) are confidential and privileged and may not be disclosed

to any person or entity except as provided in subsection (b) of this section." 30 U.S.C. § 5705(a). Subsection (b) exceptions allows disclosure of medical QA records to a federal agency or private organization for licensing or accreditation; to a Federal executive agency for participation by the Department in a health-care program with such agency; to a criminal or civil law enforcement governmental agency charged with the protection of the public health and safety; and to health-care personnel to meet a medical emergency affecting the health or safety of an individual.

dence not classified as QA records to sustain Claasen's discharge. Claasen's arguments that public policy reasons prohibit the defendant from using evidence gathered in QA programs is without merits.[9] The Office of Veterans Counsel by a memorandum dated October 21, 1994, listed additional legal reasons why the records were not protected by § 5705(b). Under VA policy, QA records are protected by § 5705(b) when the VA specifies in advance that such records fall under the protection of the statute. Any other medical QA records generated by medical QA activities not specified in the regulations are not protected by § 5705(b).[10] (A.R. at 1599.) The Court is of the opinion that the DAB properly used the peer review evaluation gathered by the QAP because the records were not specified in advance that they would fall under the protection of 38 U.S.C. § 5705(b).

■ Third, Claasen argues that the Department is collaterally estopped from re-litigating issues previously litigated in prior grievance procedures. Claasen relies on *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) to argue that the same issues that form the basis for discharge had been the subject of prior grievances filed by him. As a 38 U.S.C. § 7463(a)(1) employee, Claasen had a statutory right to appeal "an adverse personnel action" taken against him. Such an appeal proceeds through the Department's grievance procedure as provided for in 38 U.S.C. § 7463. The DAB is empowered to hear appeals from "major adverse actions" but has no jurisdiction to review an appeal from a grievance procedure. 38 U.S.C. § 7463(b)(1) and (2).

Claasen moved to strike materials from the grievance process based on his belief that the documents were provided unilaterally (*ex-parte*) to Gallagher. The DAB denied Claasen's motion to exclude the grievance examiner's reports from the DAB hearings, because the "grievance procedure has no bearing on the DAB hearing." (A.R. at 2.) Neither the statute, 38 U.S.C. § 7463, nor the internal VA regulations address the handling of responses by the parties to the deciding official, in this case the VA Regional Director, related to a grievance examiner's report. Here, only the defendant received the grievance examiner's report.

Claasen's reliance on collateral estoppel, or issue preclusion, to exclude evidence gathered in the grievance proceedings is misplaced. Under *Parklane*, collateral estoppel precludes a party against whom an issue was adversely decided in a prior final judgment from re-litigating that same position in a subsequent proceeding. Because the VA was the prevailing party in the grievance procedure, collateral estoppel does not apply. (A.R. at 1610–12.) In addition, the issue in front of the DAB—whether Claasen was incompetent in his practice of medicine so that the discharge was proper—is not the same issue presented in the grievance procedures.[11] The Court is of the opinion that collateral estoppel does not apply to the present case. As well, Claasen pursued this argument in front of the DAB and was denied relief.

■ Fourth, Claasen argues that the defendant did not follow its own regulations in the manner it initially suspended and finally fired him. Claasen relies on *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) which held that the Government must comply with its own employment regulations. Specifically, Claasen argues that,

9. According to Claasen, use of QA evidence would adversely affect the physician-client privilege, deter physicians from submitting accurate peer review information, and lead to more tort claims against the Government.

10. Then-existing Agency Regulations provided for only four programs which might generate QA records protected by § 5705. These programs are: a) Systematic Internal review; b) Medical District Initiated Peer Review organization; c) Systematic External review program; and d)

Tort Claim Information System. 38 C.F.R. § 17.500(b).

11. Claasen filed several grievances, three of which were submitted to formal procedure during his late tenure: one challenging a disciplinary reprimand; one challenging the outside peer review of charts of his patients; and one alleging that he was aggrieved when his clinical privileges were revoked. The grievance examiner issued a report on these three grievances. (A.R. at 1613–24.)

under 38 U.S.C. § 7462(b)(1)(A) [12] and *Bowman Transp. Inc. v. Arkansas–Best Freight Systems, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), he was entitled to a written notice from the Secretary stating the basis for each charge and a statement of any specific law, regulation, policy, procedure, practice, or other specific instruction that was violated with respect to each charge. As an appointee under the provisions of 38 U.S.C. § 7461(b)(1), Claasen was subject to the disciplinary procedures under the statute for major adverse actions arising from "questions of professional conduct or competence." *Id.* A major adverse action is defined as an adverse personnel action, including discharge. 38 U.S.C. § 7461(c)(2)(E). A question of professional conduct or competence is defined as a question relating to direct patient care and/or clinical competence. 38 U.S.C. § 7461(c)(3)(A) and (B). Under this statutory scheme, Claasen is entitled to an appeal to the DAB, which has exclusive jurisdiction over Claasen's appeal. 38 U.S.C. § 7462(a) and 7462(a)(1)(A) and (B).

The proposed Notice of Discharge, dated October 29, 1993, provided Claasen the mandated 30–day advance written notice and afforded him a reasonable time to respond to the proposed adverse action. As required, the DAB allowed Claasen legal representation at all stages of his case. (A.R. at 17–18.) The Notice of Discharge also informed Claasen to contact the Human Management Service if he had questions about the reasons of his discharge. *Id.* Claasen has not presented any challenges to the appointment and composition of the DAB. On April 1, 1994, Thomas Weaver, VAMC Director and the deciding officer in Claasen's case, rendered his decision on the notice of proposed discharge. (A.R. at 119–20.) The letter included the reasons for his decision and informed Claasen of his rights to appeal. Therefore, the Court concludes that the Department properly followed its regulations.

Fifth, Claasen argues that an employee may not be discharged for unsatisfactory performance in the proficiency element of clinical competence where there are no allegations of negligence. Claasen also argues that corrective actions may not be taken in cases of error in professional judgment when negligence is not involved or in cases of difference of professional opinions. Claasen directs the Court's attention to the fact that there are no allegations of negligence for the period of January 3, 1993 to May 14, 1993.

When sustaining the charge in whole that Claasen's performance was unsatisfactory in the performance of his duties as a physician, the DAB specifically found that Claasen's performance "constitutes negligence." (A.R. at 5.) The DAB additionally found that the "cases described above represent examples of specific incidents when Dr. Claasen demonstrated poor clinical competency which resulted in negligent care". (A.R. at 7.) Therefore, the Court rejects this ground.

Sixth, Claasen argues that the manner in which appellant's DAB hearing was held was manifestly unfair. Claasen alleges that the hearings were too long and created added strain due to his known history of heart problems. Claasen also alleges that his request for additional time to prepare for cross examination was wrongly denied. Claasen has maintained throughout his case that the only actual charge against him was his clinical incompetence for the period of "January 1993 to May 14, 1993." (Plaintiff's Brief at 51), and therefore, all proof must come from only that period. When discharging Claasen, the DAB not only used evidence from the above-described time frame, but all other matters relevant to Claasen's unsatisfactory performance as a physician. This Court is of the opinion that Claasen and his counsel had ample opportunity to litigate these issues in front of the DAB. Therefore, the Court will

12. Section 7462(b)(1) reads in part: "In any case in which charges are brought against a section 7401(1) employee which arises out of, or includes, a question of professional conduct or competence which could result in a major adverse action, the employee is entitled to the following: (A) At least 30 days advance written notice from the Chief Medical Director or other charging official specifically stating the basis for each charge, the adverse actions that could be taken if the charges are sustained, and a statement of any specific law, regulation, policy, procedure, practice, or other specific instruction that has been violated with respect to each charge...."

defer to the DAB's interpretations and decisions at the evidentiary hearing.

█ Finally, Claasen argues that the decision of the Secretary was untimely. Under 38 U.S.C. § 7462(c)(4), the DAB "shall render a decision in any case within 45 days of completion of the hearing, if there is a hearing, and in any event no later than 120 after the appeal has commenced." Claasen asserts that he filed the appeal on September 23, 1994, that hearings were held on February 22–24, 1995, that the DAB issued its decision on May 11, 1995, and that the Secretary issued his decision on June 30, 1995. The Secretary appointed the DAB board members on November 7, 1994 and set the hearing for January 4, 5, and 6, 1995. (A.R. at 79, 99.) However, the appointment letter plainly states that the DAB arranged "an extension of the time frames with the appellant's [Claasen's] representatives due to the difficulty of assigning board members during this time of the year and other issues [sic]. An agreement has been reached that the Under Secretary for Health will take action on the Board's recommended decision by March 17, 1995." (A.R. at 77.)

Apparently, by request of the appellant's representative, the time frame was further extended to have adequate time to review the evidence files. The new date by which the Secretary was to take action was reset to April 28, 1995. It was later discovered that this date was in error and corrected in a letter dated February 16, 1995. This letter provided that the Secretary would execute the decision of the DAB "within 90 days after the decision of the Board is received. We have been asked to notify all parties that the Under Secretary will execute a decision within 90 days after receipt of the Board's decision. The Board's decision is to be forwarded within 45 days of the completion of the hearing which should be April 10, 1995." (A.R. at 35.)

The delays that resulted by agreement of the parties, and at least one at the request of Claasen, were beneficial to him. For instance, as late as February 9, 1995, Claasen identified witnesses "which were either not yet known at the Pre-Hearing Conference or were to be selected from larger groups on the initial proposed witness list." (A.R. at 34.) Also, Claasen's counsel asked for, and was granted, reconsideration of John Yoder as a witness. *Id.* The ultimate decision of the Secretary, sent to Claasen on June 30, 1995, was timely because it was given within the 90–day period after receipt of the DAB's decision.

Title 38 U.S.C. § 7462 provides no remedy in the event a decision and the execution of that decision is delayed. Besides, Claasen provides no argument of harm or prejudice from the alleged delay, nor any law supporting his position that the case should be dismissed because of the delays. This Court is of the opinion that the delay, if any, of the Secretary's decision was the result of mutually agreed extensions of time and was not prejudicial to Claasen.

## V.  CONCLUSIONS

For the reasons expressed herein, the Court holds that the DAB's findings and conclusions are not arbitrary or capricious, were obtained with procedures required by law, and were supported by substantial evidence. Accordingly, the Court **AFFIRMS** the DAB's decision. Therefore, it is

**ORDERED**

1. That the plaintiff's motion, styled as plaintiff's appeal brief in support of reversing the discharge decision of the Disciplinary Appeals Board as approved by the Under Secretary for Health (Document # 110) be **DENIED;**

2. That this case be **DISMISSED** from the active docket of this Court.