# United States Court of Appeals for the Federal Circuit

05-3182

DR. R. MICHAEL HARDING,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

R. Michael Harding, pro se.

Steven M. Mager, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3182

DR. R. MICHAEL HARDING,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

_____

DECIDED:  May 30, 2006

_____

Before NEWMAN, SCHALL, and GAJARSA, Circuit Judges.

Opinion for the Court filed by Circuit Judge GAJARSA.  Dissenting opinion filed by Circuit Judge SCHALL.

DECISION

Dr. R. Michael Harding ("Dr. Harding") appeals from a final decision of the Merit Systems Protection Board (the "Board") dismissing for lack of jurisdiction his claim for retaliatory termination under the Whistleblower Protection Act (the "WPA").  Harding v. Dep't of Veterans Affairs, 98 M.S.P.R. 296 (2005) ("Final Decision").  Because we conclude that the Board's decision was not in accordance with law, we hereby reverse and remand the case for further proceedings in accordance with this opinion.

BACKGROUND

Dr. Harding was appointed as a Staff Physician by the Department of Veterans Affairs ("DVA") pursuant to 38 U.S.C. § 7401(1). On November 8, 2002, the DVA removed Dr. Harding from his position on charges of persistent failure to maintain certain patient records. The DVA's discharge notice indicated that Dr. Harding's removal "involve[d] a question of professional conduct or competence," entitling him to appeal the decision to a Disciplinary Appeals Board under 38 U.S.C. § 7462(a). Dr. Harding then pursued two simultaneous avenues to challenge his removal. He filed an appeal with the Disciplinary Appeals Board, which ultimately led to the removal penalty being mitigated to a fourteen-day suspension. He also pursued a claim, initially filed prior to his discharge, with the United States Office of Special Counsel, in which he alleged that he was improperly discharged in retaliation for whistleblower activities. The Office of Special Counsel, after conducting a preliminary investigation, advised Dr. Harding that it was "unable to make a determination in his favor" and terminated its investigation. It then notified him, in writing, that because he had alleged that he was a victim of "reprisal for whistleblowing," he had "a right to seek corrective action from the Merit Systems Protection Board" pursuant to an individual right of action. See 5 U.S.C. § 1221(a).

Dr. Harding then appealed to the Board. In his initial decision, the administrative law judge dismissed Dr. Harding's petition for failure to state a claim upon which relief could be granted, concluding that Dr. Harding had "failed to make a nonfrivolous allegation that he made a disclosure protected under the whistleblower statute."

<u>Harding v. Dep't of Veterans Affairs</u>, No. SE-1221-03-0216-W-1 (M.S.P.B. July 10, 2003) ("<u>Initial Decision</u>").

Dr. Harding filed a petition for review by the full Board, which, in a decision rendered on March 14, 2005, denied the petition, reopened the appeal <u>sua sponte</u>, vacated the Initial Decision, and dismissed the reopened appeal for lack of jurisdiction. <u>Final Decision</u>, 98 M.S.P.R. at 297. The Board, in a two-to-one decision, determined that it lacked jurisdiction over Dr. Harding's claim because of the exclusivity provision of 38 U.S.C. § 7462, which provides that DVA Disciplinary Appeals Boards "shall have exclusive jurisdiction to review any case . . . which arises out of . . . a question of professional conduct or competence of a section 7401(1) employee." Because Dr. Harding was a DVA physician appointed pursuant to § 7401(1), and because the DVA's discharge notice specified that Dr. Harding was removed for conduct involving his "professional conduct or competence," the Board concluded that the Disciplinary Appeals Boards had exclusive jurisdiction over his claim.

Dr. Harding timely filed an appeal with this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

STANDARD OF REVIEW

We must affirm the decision of the Board unless the decision was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. " 5 U.S.C. § 7703(c) (2005); <u>accord</u> <u>Kievenaar v. Office of Pers. Mgmt.</u>, 421 F.3d 1359, 1362 (Fed. Cir. 2005). Whether the Board has jurisdiction is a question of law, which this court reviews <u>de novo</u>. <u>Hayes v. United</u>

<u>States Postal Serv.</u>, 390 F.3d 1373, 1376 (Fed. Cir. 2004). The petitioner has the burden of establishing the Board's jurisdiction by a preponderance of the evidence. 5 C.F.R. 1201.56(a)(2)(i); <u>accord</u> <u>Serrao v. Merit Sys. Prot. Bd.</u>, 95 F.3d 1569, 1573 (Fed. Cir. 1996).

## DISCUSSION

On appeal, Dr. Harding argues that the Board's decision was not in accordance with law because it failed to properly consider an amendment to the WPA that, he asserts, expressly provides for Board review of whistleblower claims by DVA medical personnel. Like Board member Sapin in her dissenting opinion below, he argues that 5 U.S.C. § 2105(f) represents express authorization by Congress for the inclusion of DVA medical personnel in the class of "employees" protected by 5 U.S.C. § 1221.[1]

The Board considered this argument and rejected it, relying primarily on the "notwithstanding" clause of 38 U.S.C. § 7425(b), which states:

> Notwithstanding any other provision of law, <u>no provision of title 5</u> . . . which is inconsistent with . . . this chapter [38 U.S.C. §§ 7401 et seq.] shall be considered to supersede, override, or otherwise modify such provision of that section or this chapter except to the extent that such provision of title 5 or of such other law specifically provides, by <u>specific reference</u> to a provision of this chapter, [f]or such provision to be superseded, overridden, or otherwise modified.

(emphasis added).

The critical question is whether the language of 5 U.S.C. § 2105(f) is sufficient to constitute it as "a provision of title 5 . . . [that] specifically provides, by specific reference to a provision of [chapter 74 of title 38], [f]or such provision to be superseded,

---

[1] Section 2105(f) provides that for purposes of several provisions of Title V, including section 1221, "employees appointed under chapter 73 or 74 of Title 38 shall be employees."

overridden, or otherwise modified." The Board concluded that it was not, stating that "[t]he sweeping language of section 7425(b) . . . signals the drafter's intention that the provisions of the 'notwithstanding' clause trump all other laws," and that "the relevant portion of [5 U.S.C. § 2105(f)] . . . did not set out a 'specific' reference to any provision of Title 38 that was to be 'superseded, overridden, or otherwise modified.'" <u>Final Decision</u>, 98 M.S.P.R. at 300.

We disagree. Section 2105(f) of Title 5 expresses Congress' intent to supersede, not a "specific provision" of chapter 74, but <u>all</u> the provisions of chapters 73 and 74 that might operate to preclude "employees" appointed under those chapters from pursuing remedies under enumerated provisions of Title 5. The only question is whether this broad—but explicit—Congressional command should be defeated by its very breadth. We conclude that it should not. Section 2105(f), by stating Congress' intent to supersede all relevant provisions of chapters 73 and 74 for particular purposes, effectively overrides the specificity requirements of § 7425(b) and, consequently, the exclusivity provision of § 7462. To conclude that Congress' decision to supersede <u>all</u> relevant provisions of chapter 74 is somehow ineffective to supersede <u>one particular</u> provision of that chapter is to elevate form over substance and vitiate Congress' clear intent.

The cases relied upon by the dissent are entirely consistent with the result we reach today. The only Federal Circuit decision to address the application of § 2105(f) to Veterans Health Administration health-care personnel concluded that "Congress has expressly provided [DVA medical personnel] with coverage by Title 5 provisions relating to whistleblower protection." <u>James v. Von Zemenszky</u>, 284 F.3d 1310, 1320 (Fed. Cir.

2005) (citing § 2105(f)).  The Board has drawn the same conclusion.  See, e.g., Yunus v. Dep't of Veterans Affairs, 84 M.S.P.R. 78, 84 n.* (1999) (stating that "as a Department of Veterans Affairs . . . physician appointed under 38 U.S.C. § 7401(1), the appellant cannot appeal his removal directly to the Board . . . [but] can bring this appeal, in which the only issue is whether the removal was retaliatory . . . because in 1994 Congress extended the WPA's coverage to DVA physicians"), aff'd, 242 F.3d 1367 (Fed. Cir. 2001).  The United States Office of Special Counsel sent a letter specifically advising Dr. Harding of his right to appeal his removal to the Board, stating that he could "seek corrective action from the MSPB under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221," even instructing him to include the letter in his Board appeal.

Although it is true, as the dissent states, that several other circuits have held "that under the predecessor of 7425(b), Title 5 yields to Title 38 in the case of a conflict, unless the conflicting provision of Title 5 expressly supersedes the Title 38 provision," those cases address the simpler circumstance in which an arguably inconsistent Title 5 provision makes no reference to any Congressional intent to supersede any part of Title 38.  See, e.g., Am. Fed. of Gov't Employees, AFL-CIO v. Fed. Labor Relations Auth., 850 F.2d 782, 784 (D.C. Cir. 1988); Am. Fed. of Gov't Employees, Local 3306 v. Fed. Labor Relations Auth., 2 F.3d 6, 10 (2d Cir. 1993) ("American Federation II"); Veterans Admin. Med. Ctr. v. Fed. Labor Relations Auth., 705 F.2d 953, 958 (8th Cir. 1983).  The most recent of the regional circuit cases cited by the dissent noted that under § 7425(b), "provisions of title 5 . . . cannot implicitly modify title 38." American Federation II, 2 F.3d at 10 (emphasis added).  We agree with the dissent that, in the absence of any evidence of Congressional intent to override or modify a provision of Title 38, section

7425(b) must preclude any such modification. Where, however, Congress has expressly stated its intention to override multiple provisions of Title 38 for a particular purpose, sound principles of statutory construction not only permit, but require, this court to give effect to Congress' clear intent. This is especially true where, as here, the modifying provision substantially post-dates the provision that ostensibly precludes modification.[2]

Finally, the legislative history of § 2105(f) supports the view that Congress intended to provide the protections of the WPA to all Title 38 health care employees. In the floor debates discussing proposed legislation that became § 2105(f), Senator Conrad expressed concern that "[DVA] employees have reported that section 7425(b) of Title 38 supersedes Title 5 and exempts DVA health care workers from the provisions of the [WPA]." 139 Cong. Rec., pt. 4, 5822 (1993). Senator Conrad, citing a report by the House Committee on Government Operations on the deficiencies of the DVA medical quality assurance program, indicated that "DVA employees who report fraud, abuse and other inappropriate medical care at DVA medical facilities have been subject to harassment, intimidation, and other deplorable treatment by DVA management and supervisory personnel." Id. He was "very concerned that health care personnel in the [DVA] are not adequately protected under the provisions of the [WPA]." Id. In response

---

[2] Section 2105(f) was enacted in 1994. See Pub. L. No. 103-424, 108 Stat. 4361. Section 4119 of title 38 was enacted in 1980, and was simply redesignated without modification as § 7425(b) in 1991. See Pub. L. No. 102-40, 105 Stat. 187. To the extent that § 7425(b) and § 2105(f) can be said to conflict, this is an appropriate circumstance for the application of the ancient canon of construction lex posterior derogate legi priori: where two statutory provisions appear to conflict, the later in time prevails.

to this concern, Senator Conrad "introduced legislation . . . to clarify that the provisions of the [WPA] (title 5) apply to title 38 health care employees of the [DVA]." [3] Id.

In 1994, Congress adopted § 2105(f). Contrary to the assertions made by the dissent and the Board, there is no indication in the legislative history that Congress intended to limit its extension of Board jurisdiction to DVA medical personnel to those whose claim is not based on a question of "professional conduct or competence." Cf. Final Decision, 98 M.S.P.R. at 301. Similarly, the 1980 Explanatory Statement cited by the dissent does little but restate the statutory language of what is now § 7425(b). It provides no insight into whether Congress might subsequently decide to supersede entire chapters of Title 38 instead of individual provisions.

We acknowledge the interpretive difficulties of this case. We conclude, however, that by enacting § 2105(f) Congress expressed its intention to supersede all inconsistent provisions of chapters 73 and 74 of Title 38 and thereby extend Board jurisdiction to claims like Dr. Harding's. We therefore reverse the Board's decision and remand this case for consideration of the merits.[4]


REVERSED and REMANDED


---

[3] Although we acknowledge that, in interpreting statutes, courts should be "wary of testimony before committee hearings and debates on the floor of Congress save for precise analyses of statutory phrases by the sponsors of the proposed laws," S&E Contracts, Inc. v. United States, 406 U.S. 1, 13 n.9 (1972), that sensible caution does not prevent us from relying upon the remarks of the sponsor of legislation describing his purpose in introducing that legislation as an indicator of Congressional intent, at least in the absence of contradictory evidence in the legislative history. See, e.g., New Mexico v. United States, 831 F.2d 265, 269 (Fed. Cir. 1987).

[4] We express no opinion as to the proper resolution of the merits of Dr. Harding's claim.

# United States Court of Appeals for the Federal Circuit

05-3182

DR. R. MICHAEL HARDING,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

SCHALL, <u>Circuit Judge</u>, dissenting.

The majority concludes that 5 U.S.C. § 2105(f) allows Department of Veterans Affairs ("VA") medical personnel to avail themselves of the jurisdiction of the Merit Systems Protection Board ("Board") in cases arising out of a "question of professional conduct or competence" and resulting in "a major adverse action," despite the fact that 38 U.S.C. § 7462(a)(1) gives VA Disciplinary Appeals Boards "exclusive jurisdiction" over such cases. Majority op. at 5. I am unable to agree. In my view section 2105(f) does not create an exception to the exclusive jurisdiction of the Disciplinary Appeals Boards under section 7462(a)(1).

I.

Dr. Harding was removed from his position as a VA staff physician for persistent failure properly to maintain certain patient records. His removal, which was a "major adverse action," was for a matter that involved "a question of professional conduct or

competence."[1]  Under these circumstances, 38 U.S.C. § 7462(a)(1) entitled Dr. Harding to appeal the action to a VA Disciplinary Appeals Board, which he did.  In due course, the Disciplinary Appeals Board mitigated the removal to a fourteen-day suspension.  Dr. Harding could have appealed this ruling in federal district court pursuant to 38 U.S.C. § 7462(f).  See, e.g., Abaqueta v. United States, 255 F. Supp. 2d 1020 (D. Ariz. 2003); Claasen v. Brown, 33 F. Supp. 2d 511 (N.D. W. Va. 1998), aff'd, 1999 U.S. App. LEXIS 20838 (4th Cir. Aug. 30, 1999).  It appears that he did not do so, however.

While his case was pending before the Disciplinary Appeals Board, Dr. Harding filed an individual right of action ("IRA") claim with the Office of Special Counsel ("OSC"), in which he alleged that his removal was in retaliation for whistleblowing activities.  Eventually, OSC closed the case without taking action, and Dr. Harding lodged an IRA appeal with the Board.  The Board dismissed the appeal for lack of jurisdiction on the ground that Dr. Harding's exclusive remedy was to challenge the removal action before the Disciplinary Appeals Board pursuant to section 7462(a)(1).  Harding v. Dep't of Veterans Affairs, 98 M.S.P.R. 296, 297 (2005).

II.

38 U.S.C. § 7462(a)(1) gives the Disciplinary Appeals Boards "exclusive jurisdiction to review any case which arises out of (or which includes) a question of professional conduct or competence of a section 7401(1) employee" resulting in a "major adverse action."  As a physician, Dr. Harding is "a section 7401(1) employee."

---

[1]  A "major adverse action" is defined in 38 U.S.C. § 7461(c)(2) as any adverse action including a suspension, a transfer, a reduction in grade, a reduction in basic pay, or a discharge.  Under section 7461(c)(3), a "question of professional conduct or competence" involves either "[d]irect patient care" or "[c]linical competence."

Standing alone, section 7462(a)(1) compels the Board's ruling dismissing Dr. Harding's appeal for lack of jurisdiction.

The question, of course, is whether the amendment to the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (codified as amended in scattered sections of Title 5 of the United States Code) ("WPA"), that is embodied in 5 U.S.C. § 2105(f), changes that result. Section 2105(f) states that, "[f]or purposes of sections 1212, 1213, 1214, 1215, 1216, 1221, 1222, 2302, and 7701, employees appointed under chapter 73 or 74 of title 38 shall be employees." I read section 2105(f) as extending the protections of the WPA to physicians such as Dr. Harding. Indeed, we so noted in James v. Von Zemenszky, 284 F.3d 1310, 1320 (Fed. Cir. 2002). That is not to say, however, that the effect of section 2105(f) is to abrogate the jurisdictional mandate of section 7462(a)(1) in a case where a section 7401(1) employee who is the subject of a "major adverse action" for reasons of "professional conduct or competence" claims retaliation for whistleblowing. In my view, such a result is barred by the provisions of 38 U.S.C. § 7425.

Section 7425(a)(8) provides in relevant part that "[p]hysicians . . . appointed under section 7401(1) . . . of this chapter are not subject to . . . [s]ubchapter V of chapter 75 of title 5." What this means is that a VA physician is not an "employee" under 5 U.S.C. §§ 7501 and 7511. Consequently, he or she may not directly appeal an adverse personnel action, such as a removal or a suspension for more than 14 days, 5 U.S.C. § 7512(1), (2), to the Board. Only someone who is an "employee" has the right to appeal to the Board. See 5 U.S.C. § 7701. Significantly, 38 U.S.C § 7425(b) states in relevant part:

Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of . . . this chapter shall be considered to supersede, override, or otherwise modify such provision of . . . this chapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this chapter, [f]or such provision to be superseded, overridden or otherwise modified.

I understand section 7425(b) to say that no provision of title 5 or of any other law pertaining to the civil service system that is inconsistent with any provision of chapter 74 of title 38 shall be deemed to supersede such provision of chapter 74 unless it specifically refers to the chapter 74 provision. In other words, a provision of law that is inconsistent with a provision of chapter 74 and that purports to supersede the chapter 74 provision will not be viewed as doing so unless it specifically refers to the provision to be superseded.

This interpretation of section 7425(b) is supported by a passage from the Explanatory Statement accompanying the predecessor of section 7425. That statement provides that under section 7425(b)'s predecessor,[2] "no provisions of title 5 . . . shall be considered to supersede, override, or otherwise modify title 38 provisions unless such other provision does so expressly by specific reference to the title 38 provision." 126 Cong. Rec. 20,761 (1980), reprinted in 1980 U.S.C.C.A.N. at 2565 (emphasis added). I think my view is also consistent with the decisions of several of our sister circuits holding that under the predecessor of section 7425(b), title 5 yields to title 38 in the case of a conflict, unless the conflicting provision of title 5 expressly supersedes the title 38

---

[2] Until 1991, section 7425(b) was codified at 38 U.S.C. § 4119. Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. No. 102-40, 105 Stat. 187. The provisions of section 7425(b) and its predecessor are identical.

provision. In <u>American Federation of Government Employees, AFL-CIO v. Federal Labor Relations Authority</u> an employee sought to challenge her discharge through arbitration under the Federal Service Labor-Management Relations Act of 1978, 5 U.S.C. §§ 71-1-7135 (the "FSLMRA"). 850 F.2d 782, 784 (D.C. Cir. 1988). The decision to discharge the employee had previously been reviewed and affirmed by a VA Disciplinary Appeals Board. <u>Id.</u> at 783. The D.C. Circuit held that allowing arbitration under the FSLMRA would conflict with 38 U.S.C. § 4110, which stated that a VA Disciplinary Appeals Board decision was "final." <u>Id.</u> at 788. The court ruled that the employee could not seek arbitration because section 7425(b)'s predecessor "categorically and unequivocally" required FSLMRA to yield to title 38. <u>Id.</u> at 787; <u>see also</u> <u>Am. Fed'n of Gov't Employees, Local 3306 v. Fed. Labor Relations Auth.</u>, 2 F.3d 6, 10 (2d Cir. 1993) (rejecting arguments that the broad language of the FLSMRA superseded conflicting provisions of title 38 under section 7425(b)'s predecessor); <u>Veterans Admin. Med. Ctr. v. Fed. Labor Relations Auth.</u>, 705 F.2d 953, 958 (8th Cir. 1983) (holding that conflict between the Civil Service Reform Act, 5 U.S.C. § 7121, and title 38 must be resolved in favor of title 38).

In my view, 5 U.S.C. § 2105(f), the provision upon which the majority relies, does not meet the requirements of section 7425(b). The majority reads section 2105(f) as abrogating the jurisdictional requirement of 38 U.S.C. § 7462(a)(1) in the case of a VA doctor who is removed based upon a matter relating to "professional conduct or competence" and who claims retaliation for whistleblowing. Majority op. at 5. When read in this manner, section 2105(f) plainly is inconsistent with section 7462(a)(1) and has the effect of superseding section 7462(a)(1). Yet, section 2105(f) does not, as

required by section 7425(b), provide "by specific reference to" section 7462(a)(1) for section 7462(a)(1) to be superseded. Section 2105(f) nowhere mentions or references section 7462(a)(1). Thus, in accordance with the plain language of section 7425(b), section 2105(f) cannot alter the exclusive jurisdictional requirement of section 7462(a)(1). Accordingly, I would affirm the decision of the Board that, on account of section 7462(a)(1)'s grant of exclusive jurisdiction to the Disciplinary Appeals Boards, it lacked jurisdiction over Dr. Harding's appeal.

What section 2105(f) plainly does do is make provisions of the WPA applicable to VA medical personnel appointed to their positions under 5 U.S.C. § 7401(1), as we recognized in Von Zemenszky, 284 F.3d at 1320. For example, if Dr. Harding believed that, as a result of whistleblowing activity, he had been subjected to a "prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) in the form of a "personnel action" such as a denial of a promotion, see 5 U.S.C. § 2302(a)(2)(A)(ix), he could have pursued the remedies available to him under the WPA. These would include making an allegation of a "prohibited personnel practice" before OSC pursuant to 5 U.S.C. § 1214 and thereafter lodging an IRA appeal with the Board pursuant to 5 U.S.C. § 1221.

I recognize that one of the "personnel actions" listed in 5 U.S.C. § 2302(a)(2)(A) is "an action under chapter 75" and that a removal is "an action under chapter 75."[3] See 5 U.S.C. §§ 2302(a)(2)(A)(iii), 7512(1). I also recognize that the result of my reading of the statutes is that a VA physician such as Dr. Harding may bring an IRA appeal to the Board in the case of certain "personnel action[s]," but may not do so in the case of

---

[3]     Further, I acknowledge that there is substantial overlap between the types of actions that comprise a "major adverse action" under 38 U.S.C. § 7461(c)(2) and the "personnel action[s]" that may comprise a "prohibited personnel practice" under 5 U.S.C. § 2302.

others, such as a removal, that amounts to a "major adverse action" and that arises out of "a question of professional conduct or competence."[4]  38 U.S.C. § 7462(a)(1). However, I cannot escape the conclusion that this is the correct result in view of the plain language of 38 U.S.C. §§ 7425(b) and 7462(a)(1).  If Congress wishes to alter the statutory scheme to compel a different result, it certainly is free to do so.  Until then, however, I think we are bound by the terms of the statute.

For the foregoing reasons, it is my view that section 2105(f) does not create an exception from section 7462(a)(1), which gives the VA Disciplinary Appeals Boards

---

[4]    38 U.S.C. § 7463 applies in cases that do not involve either a "major adverse action" or "a question of professional conduct or competence."  Section 7463(a) provides in relevant part:

> The Secretary shall prescribe by regulation procedures for the consideration of grievances of section 7401(1) employees arising from adverse personnel actions in which each action taken either–
> (1) is not a major adverse action; or
> (2) does not arise out of a question of professional conduct or competence.
> Disciplinary Appeals Boards shall not have jurisdiction to review such matters . . . .

Based on the plain language of section 7463(a), it appears that any adverse action that does not fall under section 7462(a) falls instead under section 7463(a).  Section 7463 allows the Secretary of of the Department of Veterans Affairs ("Secretary") to create procedures for grievances.  Unlike section 7462, which states that the Disciplinary Appeals Boards "shall have exclusive jurisdiction" over cases meeting the criteria set forth at section 7462(a)(1), section 7463 does not contain any statement of exclusive jurisdiction.  Thus, it appears that section 2105(f) and section 7463 do not conflict in the same way that the section 2105(f) and section 7462 conflict.  Accordingly, an employee who is subject to an adverse action under section 7463 may avail himself or herself of the procedures set forth in the WPA.  See, e.g., Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1370 (Fed. Cir. 2001) (noting that a section 7401(1) employee may bring an IRA appeal with the Board alleging that his removal violated the WPA even though the Board would lack jurisdiction to directly review the employee's removal).  Significantly, in my view, the removal of the physician in Yunus did not arise out of "a question of professional conduct or competence."  Consequently, the exclusive jurisdiction provision of section 7462(a)(1) was not implicated.

05-3182                                    7

exclusive jurisdiction over any case arising from "a question of professional conduct or competence" resulting in a "major adverse action." Thus, I would affirm the Board's decision that it lacked jurisdiction over Dr. Harding's appeal. Accordingly, I respectfully dissent.