**Kay Coles JAMES Director of the Office of Personnel Management, Petitioner,**

v.

**Elisabeth VON ZEMENSZKY, Respondent,**

and

**Merit Systems Protection Board, Respondent.**

**No. 00–3418.**

United States Court of Appeals, Federal Circuit.

DECIDED: April 1, 2002.

---

**1312**

Department of Veterans Affairs, of Washington, DC.

Adam H. Feinstein, of Philadelphia, PA, argued for respondent Elizabeth Von Zemenszky.

Calvin M. Morrow, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent Merit Systems Protection Board. Of counsel was Lynn A. Jennings, Attorney.

Mary Dryovage, Law Offices of Mary Dryovage, of San Francisco, CA, for amicus curiae National Employment Lawyers Association. Of counsel on the brief was Paula A. Brantner, Senior Staff Attorney, National Employment Lawyers Association, of San Francisco, CA.

Paul F. Sowa, Law Offices of Paul Sowa, of Los Angeles, CA, for amicus curiae Marian V. Sowa, M.D.

Bradley B. Falkof, Barnes & Thornburg, of Chicago, IL, for amicus curiae John C. Long.

Before NEWMAN, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The issue in this case is whether the Department of Veterans Affairs may separate a physician from her position in the agency without complying with the reduction-in-force statutes and regulations that apply to civil service employees generally. We hold that the reduction-in-force statutes and regulations are applicable to such an employee and that the Merit Systems Protection Board therefore had jurisdiction over the appeal from her separation.

I

On August 28, 1988, Dr. Elisabeth Von Zemenszky received an appointment as a

---

Lisa B. Donis, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for petitioner. With her on the brief were David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel was Thomas McKeever, Jr., Attorney,

physician in the Veterans Health Administration ("VHA"), an agency within the Department of Veterans Affairs ("DVA"). Following her appointment, she was employed at a DVA medical center in Coatesville, Pennsylvania. On June 30, 1997, the Director of the Coatesville Medical Center issued Dr. Von Zemenszky a "Specific Advance Notice of Staff Adjustment." The notice informed her that because of "a reduction in the projected level of resources available to support the ... Coatesville Center activities" her position had "been determined to be in excess of local needs" and that she would be separated effective September 2, 1997. Following Dr. Von Zemenszky's unsuccessful grievance, DVA separated her from her position.

Dr. Von Zemenszky filed an appeal with the Merit Systems Protection Board asserting that she had been unlawfully separated as the result of a reduction in force ("RIF"). Because Dr. Von Zemenszky held an appointment under a special provision, 38 U.S.C. § 7401(1), the administrative judge concluded that there was a question regarding the Board's jurisdiction and therefore issued an order directing her to show that the Board had jurisdiction over her appeal.

After receiving responses from both Dr. Von Zemenszky and DVA, the administrative judge concluded that the Board had jurisdiction over Dr. Von Zemenszky's appeal. The administrative judge found that the "staff adjustment" that resulted in Dr. Von Zemenszky's separation constituted a RIF over which the Board had jurisdiction. The administrative judge found nothing in chapter 74 of title 38, under which Dr. Von Zemenszky was appointed, that authorized DVA to disregard the provisions of 5 U.S.C. §§ 3501–3504 pertaining to the retention preference of employees during a RIF. On DVA's motion, the

administrative judge certified his jurisdictional determination to the full Board for immediate review.

The Board affirmed the administrative judge's order and ruled that it had jurisdiction over Dr. Von Zemenszky's appeal. *Von Zemenszky v. Dep't of Veterans Affairs,* 80 M.S.P.R. 663 (1999) ("*Von Zemenszky I*"). Relying on title 5 RIF statutes and RIF regulations promulgated by the Office of Personnel Management ("OPM"), the Board found that Dr. Von Zemenszky was subject to the title 5 RIF provisions and had the right to appeal her separation to the Board. The Board also found that the title 38 provisions governing VHA health-care professionals did not foreclose the Board from exercising jurisdiction over Dr. Von Zemenszky's separation. Accordingly, the Board returned the case to the administrative judge to consider the merits of Dr. Von Zemenszky's appeal. Before the administrative judge, the parties stipulated that DVA did not apply OPM's RIF procedures when it separated Dr. Von Zemenszky from employment, and that she would not have been separated had DVA followed those procedures. The administrative judge then reversed Dr. Von Zemenszky's separation.

DVA filed a petition for review to the full Board and OPM intervened, challenging the Board's jurisdiction. On review, the Board—which consisted of only two members at the time of the decision— could not agree upon the disposition of the petition and issued a divided decision. *Von Zemenszky v. Dep't of Veterans Affairs,* 85 M.S.P.R. 655 (2000) ("*Von Zemenszky II*"). Because the Board was equally divided, the decision of the administrative judge became the final decision of the Board under the authority of 5 C.F.R. § 1200.3(b). Pursuant to 5 U.S.C. § 7703(d), the director of OPM then filed a petition for judicial review of the Board's

decision with this court, and we granted the petition.

## II

■ Dr. Von Zemenszky argues at the outset that OPM failed to meet its burden of establishing that the Board's decision in *Von Zemenszky II* will have a substantial impact on civil service law and that this court should therefore reverse its earlier action granting the petition for review.

■ OPM may seek review of a Board decision when the Director of OPM concludes that the Board has erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on civil service law. 5 U.S.C. § 7703(d). This court must independently determine whether an exercise of our jurisdiction is warranted. *Devine v. Sutermeister*, 724 F.2d 1558, 1562 (Fed. Cir.1983). It is particularly appropriate to grant OPM's petition for review when the interpretation of a statutory or regulatory provision is at issue. *See, e.g., Brook v. Corrado*, 999 F.2d 523 (Fed.Cir.1993); *Horner v. Schuck*, 843 F.2d 1368 (Fed.Cir. 1988).

We conclude that the potential effect of the Board's ruling on employment practices within DVA is sufficient to meet the "substantial impact" requirement. A decision by this court is necessary to clarify what procedures DVA must follow in implementing "staff adjustments" resulting in the separation of VHA health-care professionals and whether such employees have a right to appeal their separations to the Board, questions of general concern that could affect a significant number of civil service employees. Accordingly, we find it appropriate to exercise our discretionary jurisdiction to examine the merits of OPM's petition, and we decline to reconsider this court's previous decision granting the petition.

## III

■ There are two categories of VHA health-care professionals. "Non-hybrid" employees are employees whose employment is governed in significant part by chapter 74 of title 38. Those occupations include physicians, dentists, podiatrists, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries, 38 U.S.C. § 7401(1), as well as certain psychologists, dieticians, and other scientific and professional personnel, 38 U.S.C. § 7401(2). "Hybrid" employees, appointed under 38 U.S.C. § 7401(3), are also subject to chapter 74, title 38 provisions, except that "all matters relating to adverse actions, disciplinary actions, and grievance procedures" are governed by provisions of title 5. 38 U.S.C. § 7403(f)(3). The issue presented by this case is whether title 5 RIF statutes and regulations, which include a right of appeal to the Board, apply to a "non-hybrid" VHA health-care professional appointed under 38 U.S.C. § 7401(1) who has been separated by a RIF.

### A

A RIF is an administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions. *Huber v. Merit Sys. Prot. Bd.*, 793 F.2d 284, 286 (Fed.Cir.1986). A RIF is not an adverse action against a particular employee, but is directed solely at a position within an agency. *Id.*

In the Veterans' Preference Act of 1944, Pub.L. No. 359, ch. 287, § 12, 58 Stat. 390, Congress mandated that "in any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which

shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings." That portion of the Veterans' Preference Act of 1944 has remained unchanged in substance since its enactment. *See* 5 U.S.C. § 3502(a); *Grier v. Dep't of Health & Human Servs.*, 750 F.2d 944, 946 (Fed.Cir. 1984). The current version of the Veterans' Preference Act of 1944 that pertains to RIFs is codified at 5 U.S.C. §§ 3501–3504.

The title 5 statutes governing RIFs apply "to each employee in or under an Executive agency." 5 U.S.C. § 3501(b). The Department of Veterans Affairs is expressly named by statute as an "Executive agency." 5 U.S.C. §§ 101, 105. The only express exclusions from the RIF statutes are for individuals whose appointment is subject to Senate confirmation, members of the Senior Executive Service, and members of the Federal Bureau of Investigation and Drug Enforcement Administration Senior Executive Service. 5 U.S.C. § 3501(b). Section 7701(a) of title 5 provides, in relevant part, that "[a]n employee ... may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any ... regulation." Section 2105(f) of title 5 provides that employees appointed under chapter 74 of title 38 (which includes health professionals such as Dr. Von Zemenszky) are "employees" for purposes of section 7701.

OPM has promulgated regulations at 5 C.F.R. part 351 to implement the RIF statutes. The regulations address what kinds of actions constitute a RIF and what procedures must be followed in determining which employees will be reassigned during a RIF and which will be separated. Dr. Von Zemenszky's separation was necessitated by "a reduction in the projected level of resources," which is the kind of action that is covered by the RIF statutes and regulations. On their face, then, the RIF statutes and regulations would appear to apply to Dr. Von Zemenszky and to give her the right to appeal her separation to the Board. OPM argues, however, that 38 U.S.C. § 7421(a), the general VHA personnel statute, trumps the application of the RIF laws to employees in Dr. Von Zemenszky's position and forecloses the Board's exercise of RIF jurisdiction over Dr. Von Zemenszky's appeal. According to OPM, section 7421(a) authorizes DVA to apply its own procedures for "staff adjustments" rather than the title 5 RIF regulations. For that reason, OPM argues, Dr. Von Zemenszky is not entitled to invoke the protections of the RIF statutes and regulations, and she is not entitled to appeal her separation to the Board.

### B

Section 7421(a) traces its lineage to 1946, when Congress created the Department of Medicine and Surgery, now the Veterans Health Administration ("VHA"). Pub.L. No. 293, 59 Stat. 675 (1946). Concerned that the Veterans Administration had been unable to attract qualified medical professionals under the civil service system's regulations and rates of pay, Congress enacted provisions specifically relating to the hiring, promotion, pay, hours and conditions of employment, retirement, and discipline of health-care professionals employed by the predecessor to the VHA. *See Am. Fed. of Gov't Employees, Local 3884 v. Fed. Labor Relations Auth.*, 930 F.2d 1315, 1318 (8th Cir.1991). One of those provisions, which later became section 7421, concerned DVA's authority to prescribe regulations pertaining to "hours and conditions of employment and leaves of absences" of certain VHA employees. As now codified and amended, section 7421 provides, in relevant part:

(a) Notwithstanding any law, Executive order, or regulation, the Secretary [of Veterans Affairs] shall prescribe by regulation the hours and conditions of employment and leaves of absence of employees appointed under any provision of this chapter [chapter 74] in positions in the Veterans Health Administration listed in subsection (b).

(b) Subsection (a) refers to the following positions:

(1) Physicians.

(2) Dentists.

(3) Podiatrists.

(4) Optometrists.

(5) Registered nurses.

(6) Physician assistants.

(7) Expanded-duty dental auxiliaries.

38 U.S.C. § 7421.

In 1996, DVA promulgated VHA Directive 5111 and VHA Handbook 5111, which set forth agency policies and guidelines governing "staff adjustments." According to Directive 5111, "[a] staff adjustment is a formal procedure used to modify organizations through changes in staff patterns or levels." VHA Directive 5111, § 5(f). Directive 5111 authorizes staff adjustments whenever changes in staff patterns or levels through separation or reassignment are required due to factors such as "[a]uthorized budget or staff levels, legislation, technology, population changes, the lack or excess of general or specialized health care skills, and economics." VHA Directive 5111, § 2(h)(1). Handbook 5111 establishes procedures for staff adjustments, including the requirements of a written plan, advance notice, and the use of "locally developed procedures" for making placement decisions. VHA Handbook 5111 § 9.

There are significant differences between the title 5 RIF procedures and the "staff adjustment" procedures found in Directive 5111. In a RIF conducted pursuant to title 5, an agency must group all employees of the same grade and classification series into the same competitive level if they have sufficiently similar duties, qualification requirements, pay schedules, and working conditions. 5 C.F.R. § 351.403(a). Once the employees are grouped into competitive levels, the agency must order their separation based on each employee's retention standing, which is based in turn on the employee's length of service, veteran preference, tenure, and efficiency and performance ratings. 5 U.S.C. § 3502(a); 5 C.F.R. § 351.501. In contrast, VHA "staff adjustment" procedures provide for much broader management discretion by permitting each local facility to develop its own placement criteria in choosing which employees to retain, reassign, or release in a staff adjustment. Handbook 5111 suggests that such "locally developed criteria" can include considerations such as "general and special skills, experience, training, scope of practice, performance, and potential for retraining." VHA Handbook 5111 § 9(c)(1).

Directive 5111 states that it rescinds "Change 2, VA Personnel Policy Manual MP 5, Part II, chapter 11, January 24, 1992." That 1992 manual stated that in conducting staff adjustments, the "retention principles contained in 5 U.S.C. § 3501 through 3504 will apply" to the extent consistent with determining the skills required, minimizing the interruption of treatment for patients, and giving preference to veterans and those with the longest federal service. VA Manual MP-5, Part II, Chapter 11, Change 2 (January 24, 1992) § 5a. Thus, while the 1992 manual required general adherence to the retention principles of the title 5 RIF statutes, the 1996 directive and handbook

charted a different course with their emphasis on "locally developed" placement criteria. The question we must answer is whether DVA's departure from adherence to the standards set forth in the RIF statutes and regulations was permissible.

## IV

Section 7421(a) authorizes the Secretary of DVA to prescribe "the hours and conditions of employment and leaves of absence" of VHA health-care professionals. OPM argues that the term "conditions of employment" includes the circumstances in which employees are separated from employment; for that reason, OPM contends, section 7421(a), rather than the RIF statutes, applies to staffing adjustments among VHA health-care professionals that result in the separation of employees.

We conclude that the term "conditions of employment" in section 7421(a) does not encompass staffing adjustments resulting in employee separations. While standing on its own, the term "conditions of employment" could be regarded as broad enough to encompass procedures for employee separation, the context in which the term appears in section 7421(a) does not support OPM's contention that Congress intended to exempt VHA health-care professionals from generally applicable title 5 RIF procedures. The phrase "conditions of employment" appears between the terms "hours" and "leaves of absence," which suggests that the term was meant to refer to matters such as work assignments and scheduling, and was not meant to be so broad as to encompass the mechanism by which employees were removed from their positions with the agency.

The interaction of 38 U.S.C. § 7421(a) with 38 U.S.C. § 7422 provides further support for the Board's conclusion that the term "conditions of employment" in section 7421(a) does not cover RIF procedures.

Section 7422(a) provides that the right of the Secretary to prescribe regulations under section 7421 is subject to the right of employees to engage in collective bargaining "with respect to conditions of employment." The phrase "conditions of employment" must be accorded the same meaning in sections 7421 and 7422, not only because of their proximity, but also because of the express reference to section 7421 found in section 7422(a). Thus, if OPM is correct that the term "conditions of employment" covers RIF procedures, including the criteria for determining retention order at local DVA facilities, VHA health-care professionals would apparently enjoy the right to collectively bargain over that subject matter.

In fact, however, section 7422(a) does not give VHA health-care professionals such broad collective bargaining rights. Instead, it provides that the right to collective bargaining over "conditions of employment" is "in accordance with chapter 71 of title 5." Chapter 71 of title 5 allows federal employees to bargain over conditions of employment, 5 U.S.C. § 7102, but it defines "conditions of employment" to mean "personnel policies, practices, and matters ... affecting working conditions," except "to the extent such matters are specifically provided for by Federal statute," 5 U.S.C. § 7103(a)(14). *See also* 5 U.S.C. § 7117(a)(1) (federal agency's duty to bargain in good faith extends only "to the extent not inconsistent with any Federal law or any Government-wide rule or regulation"). The criteria for establishing the retention order of employees during a RIF are specifically designated in 5 U.S.C. § 3502, and as such they are not "conditions of employment" for purposes of chapter 71 of title 5. Accordingly, title 5 employees enjoy only limited rights to bargain on the subject of RIFs, and may not bargain over the criteria for retention.

*Cf. Merit Sys. Prot. Bd. v. Fed. Labor Relations Auth.,* 913 F.2d 976, 979–80 (D.C.Cir.1990); *Nuclear Regulatory Comm'n v. Fed. Labor Relations Auth.,* 895 F.2d 152, 154 (4th Cir.1990); *Am Fed. Gov't Employees v. Fed. Labor Relations Auth.,* 730 F.2d 1534, 1539 n. 5 (D.C.Cir. 1984).

OPM's broad construction of "conditions of employment" in 38 U.S.C. §§ 7421–7422 would give VHA health-care professionals greater collective bargaining rights with respect to RIF procedures than title 5 employees. Because that outcome would be contrary to the portion of section 7422(a) that ties the collective bargaining rights of VHA health-care professionals to the rights of title 5 employees, the text of section 7422 supports the Board's conclusion that the term "conditions of employment," as used in section 7421, cannot carry the broad meaning advanced by OPM.

 The history of the RIF statutes and the VHA personnel statutes provides further support for the Board's decision in this case. The title 5 RIF statutes, which were enacted in 1944, plainly applied to DVA employees when Congress created the Department of Medicine and Surgery two years later in 1946. Nothing in the 1946 statute indicates that Congress intended to repeal the RIF provisions of the 1944 statute as applied to VHA health-care professionals. A law is ordinarily considered to be repealed by implication only when a later enactment is irreconcilable with the earlier statute, or when the later enactment so comprehensively covers the subject matter of the earlier statute that it must have been intended as a substitute. *Traynor v. Turnage,* 485 U.S. 535, 547, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *Todd v. Merit Sys. Prot. Bd.,* 55 F.3d 1574, 1577 (Fed.Cir.1995). In either case, Congress's intention to repeal the earlier law must be

"clear and manifest." *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *Todd,* 55 F.3d at 1577. There is nothing inconsistent between the 1946 enactment relating to the hiring, promotion, hours and conditions of employment, retirement, and discipline of VHA health-care professionals and the RIF requirements of the Veterans' Preference Act of 1944. Nor has the government pointed to any basis for finding that Congress had a "clear and manifest" intent in 1946 to repeal the application of the title 5 RIF requirements to DVA.

OPM makes several arguments in support of its contention that section 7421(a) renders the RIF statutes and regulations inapplicable to VHA health-care professionals. We address each of these arguments in turn.

### 1. *Deference to Agency Interpretations*

OPM argues that the phrase "conditions of employment" is ambiguous, and that, under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), this court should defer to DVA's reasonable interpretation of the term. In particular, OPM contends that DVA's promulgation of Directive 5111 and Handbook 5111 represents DVA's reasonable interpretation of the term "conditions of employment" to include the procedures used to implement "staff adjustments" of VHA health-care professionals.

 OPM is authorized to issue regulations implementing the federal civil service statutes, 5 U.S.C. § 1103, which it does by following the notice and comment requirements of the Administrative Procedure Act. By contrast, DVA has not issued a comprehensive set of regulations implementing the VHA personnel provisions in title 38. Instead, DVA has set forth its interpretation of the title 38 personnel pro-

visions in the form of manuals, directives, and handbooks such as Directive 5111 and Handbook 5111. Because Directive 5111 and Handbook 5111 are akin to "interpretations contained in policy statements, agency manuals, and enforcement guidelines," they are not entitled to *Chevron* deference. *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *see also Reno v. Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Instead, they are accorded a lesser degree of deference "proportional to [their] 'power to persuade.'" *United States v. Mead Corp.,* 533 U.S. 218, 235, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). For the reasons we have explained above, we do not find OPM's interpretation of section 7421(a) persuasive, because the phrase "hours and conditions of employment and leaves of absence" is not sufficiently explicit authority for the creation of a discrete employee separation system for non-hybrid DVA employees to trump the provisions of title 5 that make RIF procedures applicable to DVA employees generally.

 OPM argues that this court should defer to OPM's interpretation of its own title 5 RIF provisions as excluding most VHA health-care professionals. OPM argues that its position was set forth in its now-retired Federal Personnel Manual and can now be found in its "Restructuring Information Handbook," which reads as follows: "Most VA employees appointed under Title 38 U.S.C. are not covered by OPM's 5 CFR part 351 reduction in force regulations, which are derived from Chapter 35 of Title 5, U.S.C. Instead, most VA employees under Title 38 are covered by a Department policy known as a 'staffing adjustment.'" OPM Restructuring Information Handbook, module 3 (unit B) at § 5, ¶ 8(g). Like Directive 5111 and Handbook 5111, however, OPM's Re-

structuring Information Handbook is not a formal regulation, but merely an informal statement of agency views. As such, it is entitled to deference only insofar as it represents a persuasive construction of the statute at issue. OPM's interpretation of the interaction of section 7421 and the title 5 RIF statutes is unpersuasive because OPM, like DVA, has not pointed to any statutory basis for finding that the general "conditions of employment" language of section 7421 supersedes the express provisions of title 5 making the RIF statutes applicable to all DVA employees. Moreover, to the extent that OPM relies on 38 U.S.C. § 7421 to describe the intersection of that statute with the title 5 RIF statutory scheme, its views are entitled to no particular deference because 38 U.S.C. § 7421 is a statute that falls outside OPM's area of expertise. *Nat'l Fed'n Fed. Employees Local 589 v. Fed. Labor Relations Auth.,* 73 F.3d 390, 392 (D.C.Cir.1996); *Am. Fed'n Gov't Employees Local 3884,* 930 F.2d at 1324 n. 12; *Colorado Nurses Ass'n v. Fed. Labor Relations Auth.,* 851 F.2d 1486, 1489 (D.C.Cir.1988).

### 2. *Interaction of the Title 5 and Title 38 Personnel Systems*

Relying on statements in *Colorado Nurses,* 851 F.2d at 1488–89, and *National Federation of Federal Employees Local 589,* 73 F.3d at 393–94, OPM argues that the personnel system for VHA health-care professionals is entirely separate from the title 5 personnel system and that the title 5 RIF procedures are therefore inapplicable to VHA employees such as Dr. Von Zemenszky. It is true, of course, that chapter 74 of title 38 contains a number of provisions that treat VHA health-care professionals differently from ordinary civil service employees. In addition to section 7421, chapter 74 contains provisions relating to the appointment of VHA health-care professionals (38 U.S.C. §§ 7401–7411),

collective bargaining and personnel administration (38 U.S.C. §§ 7422–7426), special pay for physicians and dentists (38 U.S.C. §§ 7431–7440), pay for nurses and other health care personnel (38 U.S.C. §§ 7451–7458), and disciplinary and grievance procedures (38 U.S.C. §§ 7461–7464). That is not to say, however, that the title 5 and title 38 personnel systems are completely separate and independent. Based on the general framework of title 5 discussed above, it is assumed that, absent other overriding provisions of law, title 5 applies to executive agencies such as DVA. *Am. Fed'n Gov't Employees Local 3884,* 930 F.2d at 1324. Thus, in the absence of overriding provisions in title 38 or elsewhere, even "non-hybrid" DVA medical professionals are presumably covered by many title 5 provisions, including those relating to discrimination (5 U.S.C. § 7201–7204), the right to petition Congress (5 U.S.C. § 7211), work injury compensation (5 U.S.C. §§ 8101–8152), unemployment compensation (5 U.S.C. §§ 8501–8509), life insurance (5 U.S.C. §§ 8701–8716), and health insurance (5 U.S.C. §§ 8901–8914). In addition, Congress has expressly provided VHA health-care professionals with coverage by title 5 provisions relating to whistleblower protection, 5 U.S.C. § 2105(f), and retirement benefits, 38 U.S.C. § 7426. In light of the already significant influence of title 5 provisions on "non-hybrid" VHA health-care professionals, we find no inconsistency in the applicability of the title 5 RIF provisions to employees such as Dr. Von Zemenszky.

### 3. *Section 7425(b) of Title 38*

Section 7425(b) provides that no provision of title 5 that is inconsistent with chapter 74 of title 38 "shall be considered to supersede, override, or otherwise modify such provision" except to the extent that title 5 expressly so provides. 38 U.S.C. § 7425(b). Based on section 7425(b), OPM contends that DVA's "staff adjustment" procedures should trump the title 5 RIF provisions administered by OPM because the two systems are inconsistent.

The problem with OPM's argument is that the conflict to which it points is a conflict between statutory provisions in title 5 (the RIF statutes) and a DVA policy (Directive 5111), not a conflict between statutory provisions in title 5 and title 38. OPM's argument on this point ultimately depends on its contention that the term "conditions of employment" in section 7421 covers RIF procedures. Thus, OPM's argument with respect to section 7425 is the same as its argument concerning section 7421. As discussed above, however, we do not agree with OPM that there is an inconsistency between the title 5 RIF statutes and DVA's authority to regulate "conditions of employment" under 38 U.S.C. § 7421(a). Absent such a conflict, section 7425(b) adds no force to OPM's argument.

### 4. *Recent Legislation*

Finally, OPM cites recent legislation that purportedly recognizes a difference between title 5 RIFs and DVA "staff adjustments." In 1999, Congress passed the Veterans Millennium Health Care and Benefits Act, Pub.L. 106–117, 113 Stat. 1545 (1999) ("VMCBA"). In section 1106 of the VMCBA, Congress provided continuing health insurance coverage' where "the basis for continued coverage is an involuntary separation from a position in or under the Department of Veterans Affairs due to a reduction in force *or a title 38 staffing readjustment.*" 113 Stat. 1545, 1598, § 1106 (emphasis added). That provision is now codified at 5 U.S.C. § 8905a 5(a).

OPM contends that section 1106 of the VMCBA demonstrates congressional ac-

knowledgment that there is a difference between title 38 staff adjustments of VHA employees and title 5 RIFs of non-VHA employees. OPM argues that the disjunctive word "or" to separate the phrase "reduction in force" from the phrase "Title 38 staffing readjustment" shows that Congress views these actions as separate and exclusive. Dr. Von Zemenszky, on the other hand, argues that, based on the statutory context and legislative history of Title XI of the VMCBA, the phrase "Title 38 staffing readjustment" in section 1106 pertains to DVA's authority to reorganize DVA facilities under the authority of 38 U.S.C. § 510 rather than its authority to conduct "staff adjustments" in accordance with Directive 5111.

We cannot find the clear legislative intent to distinguish Directive 5111 "staff adjustments" from "reductions in force" that OPM ascribes to Congress. First, it does not necessarily follow that the use of the phrase "Title 38 staffing readjustment" is intended to be equivalent to the term "staff adjustment" found in Directive 5111 and Handbook 5111. Furthermore, even if OPM is correct that section 1106 purposefully attached those two different labels to involuntary separations of civil servants employed under title 5 and VHA healthcare professionals employed under title 38,

the statute is silent as to what procedures must be followed when those two different classes of employees are separated. Accordingly, section 1106 of the VMCBA does not provide useful insight as to the appropriate interpretation of 38 U.S.C. § 7421(a).

## V

In sum, we conclude that the grant of authority found in section 7421(a) to "prescribe by regulation the hours and conditions of employment and leaves of absences of employees" does not encompass the authority to implement a system for implementing RIFs contrary to the title 5 RIF framework mandated by Congress. We therefore conclude that VHA health-care professionals enjoy the protections of title 5 RIF procedures along with the right to appeal a RIF separation to the Board. .

*AFFIRMED.*