[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11490

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cv-00663-RAL-MAP

JACQUES A. DURR,
M.D.

Plaintiff - Appellant,

versus

ERIC K. SHINSEKI,
M.D., Secretary, Department of Veterans Affairs,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 19, 2011)

Before TJOFLAT, CARNES and HILL, Circuit Judges.

CARNES, Circuit Judge:

This appeal brings us an issue arising from the statutory regime that governs part of the employment system in the Department of Veterans Affairs. The issue is whether the two-year probationary period laid out at 38 U.S.C. § 7403 applies to a temporary, at-will VA physician appointed under 38 U.S.C. § 7405. The appellant, Dr. Jacques Durr, contends that it does, relying on the plain language in § 7403. Taken as literally as he would have us read it, however, that language would lead to an absurd result, and the law tries to avoid absurd results.

## I.

We begin, as courts always should in matters involving statutory interpretation, with the statutory language.

## A.

Appointments of physicians in the VA system are made under one of two statutory provisions. One of them, 38 U.S.C. § 7405(a)(1)(A), governs temporary appointments, whether they are full-time or part-time, and whether they are with or without compensation. The other provision, 38 U.S.C. § 7401(1), governs all permanent appointments of physicians,[1] which are subject to a two-year

---

[1]We use the term "permanent" to describe appointments under § 7401(1) although we recognize that during the first two years of employment, a § 7401(1) appointee is not truly permanent because he or she is still subject to the probationary period. Nevertheless, the term is useful for distinguishing between appointments under § 7401(1), which may become permanent if the probationary period is successfully completed, and those under § 7405, which are only temporary.

probationary period set out in 38 U.S.C. § 7403(b).  During that two-year period, a board reviews the record of each probationary physician, and if it determines that the physician is not "fully qualified and satisfactory," he or she is terminated.  38 U.S.C. § 7403(b)(2) (2007).[2]  A physician who receives a permanent appointment and has successfully completed the two-year probationary period has substantially more job protection than one who is still on probation.  See VA Handbook 5021/5, Part V, Ch.1, ¶ 1.

B.

Dr. Jacques Durr, a native of Switzerland, is a physician and a board-certified specialist in nephrology and internal medicine.  He first began working for the VA System in 1985 in Denver, Colorado.  At that time his work was done under a general contract between the VA and the  University of Colorado School of Medicine, where he was a professor.  From 1989 to 1992, Dr. Durr was a part-time employee of the Denver VA Hospital, and in 1992 he was appointed to a full-

---

[2] Congress has recently amended 38 U.S.C. §§ 7403 & 7405, in part to provide for a new category involving part-time nurses.  See Caregivers and Veterans Omnibus Health Services Act of 2010, Pub. L. No. 111-163, § 601, 124 Stat. 1130, 1167–69 (2010).  Those amendments are irrelevant to the issue before us, except that they have caused certain statutory provisions we are discussing to be reworded in immaterial ways or renumbered.  For example, 38 U.S.C. § 7403(b)(2) (2007) has been renumbered § 7403(b)(4), although its content has not changed.  Because the law as it stood in 2007 is applicable to this case, where necessary we include a parenthetical to 2007 to indicate that we are considering the older wording and/or numbering of §§ 7403 and 7405.

3

time position with the Bay Pines VA Healthcare System in Bay Pines, Florida. Because he was not a citizen of the United States, Durr was ineligible for an appointment as a physician under 38 U.S.C. § 7401(1). See 38 U.S.C. § 7402(c). He received instead a temporary appointment as a full-time physician under 38 U.S.C. § 7405(a)(1)(A). Durr remained a temporary appointee between 1992 and November of 2006.

In June 2006 Dr. Durr became a United States citizen, making him eligible for a § 7401(1) appointment as a physician. That August, the Chief of Medicine at Bay Pines completed a "Request for Personnel Action" form, requesting that Durr's employment status be converted from a § 7405 temporary appointment to a permanent appointment under § 7401(1). That request led to a meeting on November 1, 2006, of the Bay Pines "Professional Standards Board," which recommended converting Durr's employment status "to [a] full-time permanent appointment under 38 U.S.C. [§] 7401(1)." The Director of Bay Pines signed off on the recommendation the following day, November 2, 2006, and Human Resource officers in the VA formally approved the "Request for Personnel Action" form on November 13, 2006. That form contains a handwritten note that

4

specifies: "Appointment is subject to two years probationary period beginning 11-12-06," and it lists "11-12-06" as its "Effective Date."[3]

In October 2008 Durr received his first "unsatisfactory" overall evaluation. That evaluation prompted the chief of staff and the chief of medicine at Bay Pines to initiate a "summary review" procedure, which is used to evaluate §7401(1) appointees while they are completing the probationary period required under § 7403(b)(1). The review procedure ended unhappily for Durr — the VA formally terminated him effective November 7, 2008.

Dr. Durr appealed his termination to a VA Disciplinary Appeals Board. The Board concluded, however, that it lacked jurisdiction over the appeal, reasoning that because Durr was still a probationary employee when he was terminated, he had no right to appeal.[4] The Board noted in its decision that Durr's probationary period had started on November 12, 2006, but that his termination was effective November 7, 2008, a few days shy of two years.

---

[3]The parties dispute at precisely which stage in this chain of bureaucratic procedure and paperwork Durr's § 7401(1) appointment became effective. We discuss that issue in Part IV below.

[4]The relevant chapter of VA rules governing Disciplinary Appeals Boards and the internal appeals process states: "This chapter applies to Department of Veterans Affairs (VA) employees holding a full-time, permanent appointment under 38 U.S.C. 7401(1) who have satisfactorily completed the probationary period required by 38 U.S.C. 7403(b)." VA Handbook 5021/5, Part V, Ch.1, ¶ 1.

Dr. Durr then filed this action in district court, seeking judicial review of the Disciplinary Appeals Board's decision and a writ of mandamus ordering the VA to provide him with an appeal to, and a hearing before, the Board. He did not contest the Board's understanding that probationary appointees did not have any right of appeal to it, but he contended that the Board had erred in determining that he was still a probationary employee at the time of his discharge, and should instead have found that he had satisfied the probationary period of §7403(b)(1) during his years of service as a temporary employee under § 7405(a)(1)(A). If he was right about that, the Disciplinary Appeals Board had wrongly determined that it lacked jurisdiction over his appeal. The district court rejected Durr's contention that he had completed his two-year probationary period, denied his motion for summary judgment, and instead granted summary judgment for the VA.

In his appeal to us Dr. Durr again contends that during his fourteen years of service as a temporary appointee under § 7405(a)(1)(A) he satisfied the two-year probationary period required by § 7403(b)(1). In the alternative, he argues that even if that probationary period did not begin to run until his 2006 appointment as a permanent physician under § 7401(1), that appointment occurred and the running of the probationary period began on November 2, 2006. That is the date when the Director of Bay Pines approved the recommendation of the Professional Standards

6

Board to convert Durr's status to a § 7401(1) appointment. The VA disagrees, asserting that the permanent appointment did not become effective and the probationary period that accompanies it did not start running until November 12, 2006, which is the date specified on the VA's "Request for Personnel Action" form. If Durr is correct about the effective date of the appointment, his probationary period ended on November 2, 2008, five days before his termination became effective; if the VA is correct, it did not end before he was terminated on November 7, 2008.

## II.

We review de novo the grant of summary judgment, Equity Inv. Partners, LP v. Lenz, 594 F.3d 1338, 1342 (11th Cir. 2010), applying the same substantive law as the district court. Because Durr's complaint seeks judicial review of the decision of a VA Disciplinary Appeals Board, we, like the district court, are limited in our review by 38 U.S.C. § 7462(f). That subsection provides that a court may set aside the judgment of a Disciplinary Appeals Board only if it determines the judgment is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2)(A)–(C).

III.

A.

Dr. Durr's primary argument centers on the plain language of 38 U.S.C. § 7403, which sets out a two-year probationary period for physicians and other types of VA healthcare professionals. That statute provides in relevant part:

> (a)(1) Appointments under this chapter of health-care professionals to whom this section applies may be made only after qualifications have been satisfactorily established in accordance with regulations prescribed by the Secretary, without regard to civil-service requirements.
> (2) This section applies to the following persons appointed under this chapter:
>> (A) Physicians.
>
> * * *
>
> (b)(1) Appointments described in subsection (a) shall be for a probationary period of two years.

38 U.S.C. § 7403 (2007). Durr lays particular stress on the phrase "under this chapter," arguing that the phrase obviously refers to Title 38, Chapter 74, and he points out that both §§ 7401 and 7405 are part of Chapter 74. On that foundation rests Durr's argument that under the plain language of 38 U.S.C. § 7403, the probationary period applies to <u>all</u> appointments of physicians under Chapter 74, § 7405(a)(1)(A) temporary appointments as well as §7401(1) permanent ones. It follows, Durr insists, that his 14 years of service between 1992 and 2006 as a temporary appointee satisfied § 7403's probationary period because he was subject

8

to, and fully served out, the two-year probationary period during those years. So, the argument goes, when Durr became a United States citizen in 2006 and received his §7401(1) permanent appointment that November, he was not subject to a new probationary period but automatically became a permanent employee; his two-year probationary period having ended twelve years before. If all of that is correct, then the VA's Disciplinary Appeals Board was wrong to conclude that it lacked jurisdiction over his appeal on the ground that he had not completed his probationary period at the time he was let go.

## B.

The VA stresses that Dr. Durr's interpretation of § 7403 is inconsistent with its own longstanding administrative interpretation of the statutory regime governing its personnel system. The VA has a clear, established policy of not applying the probationary period set out in § 7403(b)(1) to temporary appointments under § 7405, and for that reason does not credit temporary service under § 7405 toward the two-year probationary period required of an employee who is given a permanent appointment under § 7401(1).

That VA policy is not, however, laid out in formal regulations. It is, instead, reflected in various personnel handbooks. For example, while the chapter of VA Handbook 5021/6 titled "Title 38 Probationary Employees" states that the

9

category of "probationary employees" includes "employees appointed under 38 U.S.C. [§] 7401(1), i.e., physicians," it also makes clear that "[t]his chapter does not apply to employees appointed under . . . 38 U.S.C. [§] 7405."  VA Handbook 5021/6, Part III, Ch. 1, ¶ 1.  Likewise, when VA Handbook 5005/7 describes the service that can be credited toward completion of the probationary period, it includes "[c]ontinuous service in an appointment under 38 U.S.C. [§§] 7401(1) or 7306," but it does not include service in an appointment under § 7405.  See VA Handbook 5005/7, Part II, Ch. 3, § F, ¶ 3(d).

The VA argues that its interpretation of the statutory framework, as reflected in those handbooks, is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782 (1984).  Alternatively, it argues that if we find Chevron deference does not apply, its interpretation is still entitled to "respect" under Skidmore v. Swift, 323 U.S. 134, 140, 65 S.Ct. 161, 164 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.")

10

In Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1665, 1662 (2000), the Supreme Court stated that ordinarily "policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law [] do not warrant Chevron-style deference." Christensen, however, was based in part on the fact that the agency opinion letter in that case was not the result of "a formal adjudication or notice-and-comment rulemaking." Id., 120 S.Ct. at 1662. Relying on both that decision and United States v. Mead Corp., 533 U.S. 218, 229–30, 121 S.Ct. 2164, 2172–73 (2001), this Circuit has applied Chevron level deference to an agency handbook when Congress has authorized an agency to "issue regulations that have the force of law" and the agency's handbook has been subject to notice-and-comment rulemaking, Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1273 (2009).

Congress has authorized the VA to issue regulations prescribing "the hours and conditions of employment" of its healthcare employees, including physicians. 38 U.S.C. § 7421. And the parts of Handbook 5021/6 that we have quoted, including the statement that the chapter describing probationary employees "does not apply to employees appointed under . . . 38 U.S.C. [§] 7405," was published in the Federal Register. See VA Directive and Handbook 5021, 71 Fed. Reg. 2615, 2616 (Jan. 17, 2006). That publication, however, was in the context of seeking

11

notice and comment on proposed revisions to the Handbook that resulted from the inclusion of chiropractors as permanent full-time employees under 38 U.S.C. § 7401(1). We also note that one of our sister circuits has concluded that only Skidmore deference was owed to another of the VA's personnel handbooks, Handbook 5111. In James v. Von Zemenszky, 284 F.3d 1310 (Fed. Cir. 2002), the Court observed:

> [The VA] has not issued a comprehensive set of regulations implementing the VHA personnel provisions in title 38. Instead, [the VA] has set forth its interpretation of the title 38 personnel provisions in the form of manuals, directives, and handbooks such as Directive 5111 and Handbook 5111. Because Directive 5111 and Handbook 5111 are akin to interpretations contained in policy statements, agency manuals, and enforcement guidelines, they are not entitled to Chevron deference. Instead, they are accorded a lesser degree of deference proportional to [their] power to persuade.

Id. at 1318–19 (last alteration in original) (citations and quotation marks omitted).

We need not decide whether the parts of the VA's personnel handbooks that we are considering are entitled to full Chevron deference or simply to Skidmore deference because the difference between those two measures of deference makes no difference to the outcome in this case. For that reason, we will assume that only Skidmore deference is due. Under that assumption, while the specific handbook provisions we are considering here are "not controlling . . . by reason of their authority," they "do constitute a body of experience and informed judgment

12

to which courts and litigants may properly resort for guidance." Skidmore, 323

U.S. at 140, 65 S.Ct. at 164.

C.

In making his argument about the plain language of 38 U.S.C. § 7403, Dr.

Durr relies chiefly on the many decisions from this Court where we have begun

and ended our statutory construction with just that, the plain language. For

example, in CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217 (11th Cir.

2001), we summarized:

> This Court has repeatedly stated that "[w]e begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." We have also said just as frequently that "[w]hen the import of words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." In other words, "[w]hen the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." The rule is that "we must presume that Congress said what it meant and meant what it said."

Id. at 1222 (alterations in original) (citations omitted).

We fully stand by that decision, but in it we also made clear that "courts

may reach results inconsistent with the plain meaning of a statute 'if giving the

words of a statute their plain and ordinary meaning produces a result that is not

just unwise but is clearly absurd.'" Id. at 1228 (quoting Merritt v. Dillard Paper

13

Co., 120 F.3d 1181, 1188 (11th Cir. 1997)). The rationale for that exception is this: "Because the legislature is presumed to act with sensible and reasonable purpose, a statute should, if at all possible, be read so as to avoid an unjust or absurd conclusion." In re Graupner, 537 F.3d 1295, 1302 (11th Cir. 2008) (quotation marks omitted); see also Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir. 2006) (applying the "venerable" principle that "statutory language should not be applied literally if doing so would produce an absurd result" (quotation marks omitted)).

Moreover, in construing a statute, "[w]e do not look at one word or term in isolation, but instead we look to the entire statutory context." United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999) (citing United States v. McLemore, 28 F.3d 1160, 1162 (11th Cir. 1994); see also In re Int'l Admin. Servs. Inc., 408 F.3d 689, 707 n.7 (11th Cir. 2005) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotation marks omitted)). Not only that, but "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its policy." Colortex v. Richardson, 19 F.3d 1371, 1375 (11th Cir. 1994) (quotation marks omitted).

We are convinced that this case presents one of the rare situations where the plain language of a statute, at least where read in isolation, yields a result that is both absurd and completely at odds with the entire statutory context in which the language is found. "[U]nder this chapter," as that phrase is used in 38 U.S.C. § 7403(a)(1) and (a)(2), cannot possibly refer to appointments under 38 U.S.C. § 7405, even though § 7405 is part of the same chapter.

Under the statute, a permanent employee who is still within the probationary period may be let go only if a summary review board finds that the person "is not fully qualified and satisfactory." 38 U.S.C. § 7403(b)(2) (2007). By contrast, a temporary, at-will employee does not have even that much statutory protection and may be let go without so much as a summary proceeding and even if he is "fully qualified and satisfactory." See VA Handbook 5021/3, Part VI, ¶ 15. Insofar as the VA statutes are concerned, because a temporary employee serves at will, he may be let go for a good reason, a bad reason, or no reason at all.[5] It would be oxymoronic and absurd to conclude that a temporary, at-will employee has the

---

[5]We say "insofar as the VA statutes are concerned" because other statutes provide that no employee may be discriminated against because of race, ethnicity, sex, age, protected activity, and so on. See Age Discrimination in Employment Act, 29 U.S.C. § 623; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3. We do not, however, have any of those types of claims before us in this proceeding.

15

same protections against discharge during his term of employment as a permanent employee who is not serving at will but is instead on probation.

Not only that, but § 7405 contemplates that most temporary full-time appointments will be for a period of 90 days or less, unless the "Under Secretary for Health finds that circumstances render it impracticable to obtain the necessary services" by way of § 7401 appointments. 38 U.S.C. § 7405(c)(1). Under Dr. Durr's construction of the statute, however, in which the probationary period would apply to all employees, the vast majority of temporary employees would leave before completing any but a small fraction of the probationary period.

His interpretation would yield other anomalous results. Section 7405 applies not only to temporary full-time appointments but also to part-time and without-compensation appointments. See 38 U.S.C. § 7405(a)(1). In Durr's view, a physician who came in without pay for one hour a week for two years and then received an appointment under § 7401(1) to a full-time position would automatically have completed the necessary probationary period. Yet, the whole point of a probationary period is to test out whether a person is suitable for a permanent position. The VA would have little opportunity and less motivation to determine whether a temporary, part-time person (who might or might not be compensated) was suitable for a full-time, permanent position.

16

We conclude, consistent with the VA's longstanding interpretive framework to which we are according Skidmore deference, that the probationary period required by 38 U.S.C. § 7403(b)(1) applies only to permanent appointments made under § 7401(1).

IV.

Dr. Durr's alternative argument has to do with when he was appointed to the permanent position, which determines when the probationary period attached to that appointment began to run. He argues that he was appointed to the permanent position and the probationary period for it began to run on November 2, 2006, instead of on November 12, 2006. That would make all the difference, because it would mean that he had completed the two-year probationary period on November 2, 2008, five days before his termination became effective on November 7, 2008. As a result, the VA's Disciplinary Appeals Board would have jurisdiction to consider his appeal of the termination decision because he was no longer a probationary employee at the time he was terminated.

To support this argument Dr. Durr relies on the fact that on November 2, 2006, the Director of Bay Pines approved the Professional Standards Board's recommendation that his employment status be converted to a full-time permanent appointment under 38 U.S.C. § 7401(1). In opposition, the VA points to two

17

exhibits in the record. One is the actual record of the Bay Pines Professional Standards Board's meeting on November 1, 2006. The other document is a form entitled "Request for Personnel Action," which evidently was used to approve or effect the approval of the conversion of Durr's employment status to a §7401(1) appointment. That form is signed by three different VA human resource officers, who dated their signatures "11-13-06." It also contains a handwritten note in the "Remarks" section that states: "Appointment is subject to two years probationary period beginning 11-12-06." Finally, the form lists "11-12-06" as its "Effective Date."[6]

Based on those two documents, the district court concluded that "the VA had not completed conversion of [Dr. Durr's] status from temporary to permanent until November 12, 2006, as noted on the VA's form." Durr contends that the district court was wrong about that. He also argues for the first time that he did

---

[6]The VA points out that the difference between the date of the signatures and the date that Durr's probationary period began is consistent with its own internal regulations. November 13, 2006, was a Monday, but VA Handbook 5005/12 states: "When an appointee is to enter on duty on Monday, the appointment will be effective on the preceding Sunday provided the employee is available for duty on that day." VA Handbook 5005/12, Part II, Ch. 3, § A, ¶ 3(n)(1).

Moreover, the VA argues that its own regulations specify that appointments are made effective only after approval by "appointing officers," who are "Responsible Human Resource Management Officer[s]." Id. at Part II, Ch. 3, § A, ¶ 2(a). In other words, under the VA's regulations, the mere fact that the Director of Bay Pines approved the Professional Standards Board's recommendation on November 2, 2006, did not effect the conversion of Dr. Durr's employment status from a § 7405(a)(1)(A) appointment to a § 7401(1) appointment. See id.

18

not have a chance either to review or conduct discovery about the Personnel Action form, which lists its effective date as "11-12-06" and contains the handwritten note specifying that Durr's probationary period is to run from November 12, 2006. He also raises several arguments about that form's authenticity. But these objections and arguments come too late.

After the VA submitted the Request for Personnel Action form as an exhibit in support of its opposition to Dr. Durr's motion for summary judgment, he did not ask the district court for an opportunity to conduct discovery as to authenticity or anything else. Nor did he argue that form should not be considered until it was authenticated. Nor did he ask the district court to stay its ruling on summary judgment until he could discover and submit evidence that might suggest the form was not authentic. As a result, Durr has not preserved any factual dispute as to that form's authenticity. The district court did not abuse its discretion in considering the form, and given the form and the other exhibit, the court correctly rejected Durr's alternative theory.

**AFFIRMED.**